**RICKETTS, Appellee and Cross–Appellant,**

**v.**

**RICKETTS, Appellant and Cross–Appellee.**

[Cite as *Ricketts v. Ricketts* (1996), 109 Ohio App.3d 746.]

Court of Appeals of Ohio,
Twelfth District, Butler County.

Nos. CA95–02–034, CA95–03–038.

Decided March 11, 1996.

748

*Fred Ross,* for appellee and cross-appellant.

*Mary Lou Kusel,* for appellant and cross-appellee.

Powell, Judge.

Defendant-appellant and cross-appellee, Willard Ricketts, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, contesting the court's division of his pension fund.

Appellant and plaintiff-appellee and cross-appellant, Sandra Ricketts, were married on July 8, 1972. One child was born during the marriage and is now emancipated. Appellee filed a complaint for alimony only on March 17, 1986. Appellant answered the complaint and subsequently filed a counterclaim for divorce. The trial court entered a judgment entry and final decree of divorce on September 21, 1988.

Pursuant to the divorce decree, appellant's pension fund, accumulated as a result of his employment with the Middletown Fire Department, was divided. The trial court found that appellant had been employed with the fire department for twenty-two years and that the parties had been married for fifteen years. The trial court determined the duration of the marriage by using June 1, 1986, the date on which the parties began living separate and apart, as the termination date of the marriage. The trial court further found that the proper formula to apply for division of appellant's pension would be a two-thirds ratio in that the parties were married for two-thirds of the earning period of the pension. In addition, the decree provided that the appellee is entitled to a Qualified Domestic Relations Order ("QDRO") for appellant's pension as of June 1, 1986.[1] However, a QDRO was never prepared to divide appellant's pension fund, which is contained in the Police and Firemen's Disability and Pension Fund of Ohio.

The divorce decree also ordered appellant to pay spousal support to appellee in the amount of $75 per week and provided for termination of such support if either party died or if appellee remarried. The trial court retained full jurisdiction over the spousal support issue.

On April 28, 1992, appellant filed a motion to terminate his spousal support obligation. The matter was submitted to a referee, who recommended that appellant's spousal support obligation be reduced to $50 per week. In addition, with the consent of the parties, the referee corrected the divorce decree in terms of the pension division in order to reflect that appellee was entitled to a QDRO

---

1. "A QDRO is a qualified domestic relations order 'which creates or recognizes the existence of an alternate payee's right to, or assigns to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan * * *.'" *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 179–180, 559 N.E.2d 1292, 1295, quoting Employee Retirement Income Security Act of 1974 ("ERISA"), Section 206(d)(3)(B)(i)(I) and Section 414(p)(1)(A)(i), Title 26, U.S.Code. See, also, *Livingston v. McKie* (Aug. 17, 1992), Butler App. No. CA92–01–011, unreported, 1992 WL 201101.

for value equivalent to one half of two thirds of the total accumulated value or earnings of appellant's pension fund as of June 1, 1986. The referee's recommendations became the order of the trial court on October 27, 1992.

Appellant retired on May 16, 1992. On August 19, 1993, appellee filed a motion seeking resolution of the pension matter. On October 27, 1993, the parties agreed that the pension would be evaluated by David Kelley of Pension Evaluators.

On July 25, 1994, the trial court filed an entry adopting Kelley's reports of November 3 and 4, 1993. The trial court determined that it had continuing jurisdiction over the pension distribution and found that appellee was entitled to a monthly benefit of $489.13 from appellant's current pension payments, with a three percent cost of living adjustment added each year that it is awarded.[2] The payments to appellee were to begin retroactively as of July 1992, when the pension benefits commenced. The trial court expressly retained full and continuing jurisdiction over appellant's pension plan.

Subsequently, the parties filed several motions. Appellant filed another motion to terminate his spousal support obligation. Appellee filed a motion seeking to hold appellant in contempt for failure to pay spousal support and accumulated arrearages. Appellee also filed a motion requesting the court to increase the amount that appellant was required to pay to appellee on the accumulated pension arrearages since appellant had failed to pay appellee her share of his pension when he began receiving it. The trial court heard the parties' motions on December 20, 1994. At the hearing, David Kelley testified regarding the valuation and distribution of appellant's pension as reflected in his reports of November 3 and 4, 1993.

In an entry filed on January 31, 1995, the trial court determined the value of appellant's pension by utilizing a coverture fraction, representing the years of marriage during the pension, divided by the total number of years in the pension plan divided by two, of the present value of the pension. The trial court ordered that appellee is entitled to receive 23.94 percent of appellant's current pension benefits.[3] The trial court also granted appellant's motion to terminate spousal

---

**2.** The $489.13 monthly figure is based upon Kelley's calculations contained in his November 4, 1993 report which state that appellee's share of appellant's pension should be computed by multiplying one half times the 13.89 years appellant was employed during the marriage divided by 26.0397 total years appellant was employed, or one half of 53.3698 percent (26.68 percent). Based upon an annual pension of $22,000, appellee would be entitled to receive $489.13 per month.

**3.** The trial court's entry does not contain the calculations utilized by the court in arriving at this percentage. However, the record indicates that the trial court based its decision upon the testimony of Kelley on December 20, 1994. Kelley testified that because appellant purchased

support and ordered appellant to pay the arrearage owing on the pension division by paying an additional $75 per month. It is from this judgment that appellant now appeals, setting forth the following assignments of error:

Assignment of Error No. 1:

"The trial court erred to the prejudice of the defendant/appellant by reserving jurisdiction eight years after the divorce, when no jurisdiction was reserved in the judgment entry and decree of divorce, to modify the division of property as awarded in the judgment entry and decree of divorce."

Assignment of Error No. 2:

"The trial court erred to the prejudice of the defendant/appellant when it ordered that the appellee receive 23.94% of appellant's current monthly pension benefits."

In his first assignment of error, appellant contends that the trial court erred by exercising jurisdiction to modify the property division eight years after the divorce had been granted because the court failed to reserve jurisdiction in the judgment entry and divorce decree. Appellant argues that the divorce decree, filed in 1986, specifies a formula to be used for the division of appellant's pension plan and that the trial court abused its discretion by modifying the pension division after the divorce.

Pension and retirement benefits acquired by either spouse during the course of a marriage are marital assets that must be considered in arriving at an equitable division of marital property. *Bisker v. Bisker* (1994), 69 Ohio St.3d 608, 609, 635 N.E.2d 308, 309; *King v. King* (1992), 78 Ohio App.3d 599, 606, 605 N.E.2d 970, 974; *Livingston v. McKie* (Aug. 17, 1992), Butler App. No. CA92–01–011, unreported, 1992 WL 201101. A trial court has broad discretion in dividing marital property, including pension benefits. *Bisker*, 69 Ohio St.3d at 609, 635 N.E.2d at 309; *Hoyt v. Hoyt* (1990), 53 Ohio St.3d 177, 559 N.E.2d 1292, paragraph one of the syllabus. However, a trial court does not have continuing jurisdiction to modify a property division incident to a divorce decree. See R.C. 3105.171(I); *Bean v. Bean* (1983), 14 Ohio App.3d 358, 361–362, 14 OBR 462, 465–467, 471 N.E.2d 785, 789–791.

In determining the proper division of pension benefits, "[t]he trial court should attempt to preserve the pension or retirement asset in order that each

---

additional military time from his pension plan, the coverture fraction should be changed from 13.89 divided by 26.0397 to 13.89 divided by 29.023. Thus, the coverture percentage of appellant's pension to which appellee is entitled would change from 26.68 percent to 23.94 percent. The 23.94 percent figure is computed by multiplying one half times 13.89 divided by 29.023.

party can procure the most benefit, and should attempt to disentangle the parties' economic partnership so as to create a conclusion and finality to their marriage." *Hoyt,* 53 Ohio St.3d 177, 559 N.E.2d at 1292, paragraph two of the syllabus. Further, the proper method to determine the value of pension benefits is to compute a coverture fraction representing "the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment." *Id.* at 182, 559 N.E.2d at 1298.

■ Ohio courts have recognized several alternative methods for equitably dividing pension funds within the context of the overall property division. The four alternatives include (1) withdrawing the employee spouse's share of the funds from the pension plan and apportioning and distributing them at the time of the divorce; (2) determining the present value of the pension fund, calculating the nonemployee spouse's proportionate share, and offsetting that amount with other marital assets or a lump sum payment; (3) determining the present value of the pension fund, calculating the nonemployee spouse's proportionate share, and offsetting that amount with installment payments from the employee spouse; and (4) determining the appropriate percentage or amount of future benefits in view of the circumstances and ordering that amount to be paid directly from the fund to the nonemployee spouse if and when the pension matures. See, *e.g., Smith v. Smith* (1993), 91 Ohio App.3d 248, 253, 632 N.E.2d 555, 558–559; *Sprankle v. Sprankle* (1993), 87 Ohio App.3d 129, 132, 621 N.E.2d 1310, 1311–1312; *Connolly v. Connolly* (1990), 70 Ohio App.3d 738, 743, 591 N.E.2d 1362, 1365, fn. 1; *Powell v. Powell* (1989), 49 Ohio App.3d 56, 58, 550 N.E.2d 538, 540–541; *Day v. Day* (1988), 40 Ohio App.3d 155, 159, 532 N.E.2d 201, 205–206. However, public pension funds, such as the Police and Firemen's Disability and Pension Fund, are not subject to attachment, garnishment, levy, or seizure under any legal or equitable process, including QDROs relating to a property division in a divorce action. See, *e.g.,* R.C. 742.47. Thus, a QDRO is not an acceptable method for division of a public pension. *Id.*

In the judgment entry and decree of divorce filed on September 21, 1988, the trial court established a formula for division of appellant's pension fund. The decree provided that appellee was to receive a two-thirds ratio of appellant's pension fund as of June 1, 1986, since the parties were married for two thirds of the earning period of the pension.[4] The court also ordered counsel to prepare a QDRO for distribution of the pension fund in accordance with the decree, but a

---

4. The divorce decree was later amended, with the consent of the parties, to provide that appellee was to receive one half of two thirds of appellant's pension as of June 1, 1986. As of June 1, 1986, the trial court found that the parties were married for fifteen years and that appellant had been employed for twenty-two years. Thus, the two thirds ratio was computed by dividing fifteen by twenty-two.

QDRO for division of the pension was never filed.[5] However, on January 31, 1995, after hearing expert testimony on the pension distribution issue, the trial court ordered appellant to pay to appellee 23.94 percent of his current monthly pension payment.[6]

After a careful review of the record, we find that when the trial court changed the numerator of the coverture fraction from fifteen, as established in the divorce decree, to 13.89, the trial court impermissibly modified the pension division. See R.C. 3105.171(I). Accordingly, appellant's first assignment of error is sustained. The trial court is directed to recalculate the amount of appellant's pension fund to which appellee is entitled in accordance with the formula established in the divorce decree and the coverture fraction as established in *Hoyt*, 53 Ohio St.3d at 182, 559 N.E.2d at 1297–1298. Thus, appellee is entitled to one half of the number of years appellant was employed during the marriage divided by the total number of years appellant has in his pension. See *id.* at 182, 559 N.E.2d at 1297–1298. Appellee is entitled to one half of fifteen divided by 29.023, or one half of .5168, or 25.84 percent of appellant's monthly pension benefit.[7] The record indicates that appellant receives an annual pension benefit of approximately $22,000. Accordingly, appellee is entitled to 25.84 percent of $22,000, or $5,684.80 annually, or $473.73 monthly with cost of living increases added if and when they are awarded, from the date of appellant's retirement, with arrears to be reduced by an additional payment of $75 per month.[8]

In his second assignment of error, appellant contends that the trial court erred in ordering that appellee is entitled to 23.94 percent of appellant's current monthly pension benefits. Appellant argues that the trial court abused its discretion in this regard because by ordering that appellee is to receive a percentage of his current monthly pension benefits, appellee is able to receive a portion of the benefits earned through appellant's postdivorce employment.

5. As previously stated, appellant's pension fund does not recognize QDROs. See R.C. 742.47.

6. The trial court did not specify the monthly payment appellee is entitled to receive based upon this percentage amount. As previously stated, this percentage amount is based upon appellee receiving one half of 13.89 divided by 29.023, or 23.94 percent of appellant's current monthly pension payment.

7. The numerator of fifteen is based upon the trial court's finding contained in the divorce decree filed on September 21, 1988, that the parties had been married for fifteen years. The denominator of 29.023 is based upon the total number of years that appellant was employed by the fire department, including the military time he purchased.

8. Our calculations are based upon information contained in the record before us. The trial court is directed to review the current information regarding appellant's pension benefits, including any cost of living adjustment increases, and make any necessary adjustments to our calculations in accordance with this decision.

■ As discussed in connection with appellant's first assignment of error, public pension funds, such as the Police and Firemen's Disability and Pension Fund, do not recognize QDROs. See, *e.g.*, R.C. 742.47. Therefore, we find that it is acceptable for a trial court to establish, in a divorce decree, a formula for future division of a public pension when the spouse participating in the pension begins to draw the benefits.[9] See *Sprankle*, 87 Ohio App.3d at 134–135, 621 N.E.2d at 1313–1314. In this manner, whether the participating spouse terminates his or her employment early or retires at a later date, the nonparticipating spouse is entitled to his or her share when the participating spouse begins to receive benefits or the pension account balance.

This method permits the nonparticipating spouse to share with the participating spouse in any increases or decreases in the value of the pension after the divorce attributable to the continued participation of the participating spouse in the pension plan. *Layne v. Layne* (1992), 83 Ohio App.3d 559, 567, 615 N.E.2d 332, 337. "So long as each former spouse is limited to his or her proportionate right to share, there is neither unjust enrichment of the nonparticipant nor an inequitable deprivation of his or her rights." *Id.* Accordingly, appellant's second assignment of error is overruled.[10]

Appellee and cross-appellant raises the following assignments of error for review in her cross-appeal:

Assignment of Error No. 1:

"The Court erred to the prejudice of the Plaintiff/Appellee/Cross–Appellant by terminating spousal support without reserving jurisdiction to review same in the future as circumstances may require."

Assignment of Error No. 2:

"The trial Court erred to the prejudice of the Plaintiff/Appellee in finding that the arrearage owing on plaintiff's entitlement to her marital portion of the pension should be paid at the nominal rate of $75.00 per month. Such a nominal payment on the arrearage is inequitable to the Plaintiff."

---

9. This method of division is a hybrid of the third and fourth alternative methods for division of pension benefits which have previously been recognized by Ohio courts. It involves calculating the percentage or amount of future benefits to which the nonparticipating spouse is entitled, with payment to be made in installment payments from the participating spouse once that spouse begins receiving pension benefits from his or her public pension fund.

10. We do not address the situation where one or both spouses die prior to the commencement of benefits or during the benefit payment period as such facts are not before this court. Further, the decision of *Erb v. Erb* (June 2, 1994), Cuyahoga App. Nos. 65666 and 65667, unreported, 1994 WL 245676, which is currently pending before the Ohio Supreme Court in case No. 94–1600, may affect this whole issue. (Reporter's Note: See *Erb v. Erb* (1996), 75 Ohio St.3d 18, 661 N.E.2d 175.)

In her first assignment of error on cross-appeal, appellee contends that the trial court erred by terminating appellant's spousal support obligation without reserving jurisdiction to review the spousal support issue in the future.

A trial court does not have continuing jurisdiction to modify a spousal support award, even though the award is subject to termination in the event of death, remarriage, or cohabitation, unless the court expressly reserves jurisdiction to modify. *Stevens v. Stevens* (1986), 23 Ohio St.3d 115, 121, 23 OBR 273, 278–279, 492 N.E.2d 131, 136, fn. 8; *Ressler v. Ressler* (1985), 17 Ohio St.3d 17, 17 OBR 14, 476 N.E.2d 1032, syllabus; *Colizoli v. Colizoli* (1984), 15 Ohio St.3d 333, 336, 15 OBR 458, 460–461, 474 N.E.2d 280, 283–284. A court with authority to modify a spousal support award has discretion to terminate the award. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 218–219, 5 OBR 481, 482–483, 450 N.E.2d 1140. "Absent a showing that a trial court abused its discretion, a termination of [spousal support] payments in a modification proceeding should not be disturbed." *Id.* at syllabus.

The decision whether to retain jurisdiction to modify a spousal support award is within the trial court's discretion. *Johnson v. Johnson* (1993), 88 Ohio App.3d 329, 331, 623 N.E.2d 1294, 1295. The trial court is not required to retain jurisdiction over a spousal support award. *Fausey v. Fausey* (Oct. 13, 1995), Montgomery App. No. 14673, unreported, 1995 WL 634378. Further, the Ohio Supreme Court has clearly and expressly indicated that spousal support awards "should possess a degree of finality and certainty." *Ressler,* 17 Ohio St.3d at 18, 17 OBR at 15, 476 N.E.2d at 1033.

In the judgment entry and final decree of divorce filed on September 21, 1988, the trial court ordered appellant to pay spousal support to appellee in the amount of $75 per week. The decree provided that such support would terminate if either party died or appellee remarried. Further, the trial court retained full jurisdiction over the spousal support issue. Subsequently, appellant's spousal support obligation was reduced to $50 per week, and in an entry filed on January 31, 1995, the trial court terminated appellant's obligation to pay spousal support to appellee. The trial court did not reserve jurisdiction over the spousal support issue when it terminated appellant's spousal support obligation.

Based upon our review of the record, we find no abuse of discretion in the trial court's failure to retain jurisdiction over the spousal support issue when terminating appellant's spousal support obligation. See *Johnson,* 88 Ohio App.3d at 331, 623 N.E.2d at 1295. Accordingly, appellee's first assignment of error on cross-appeal is overruled.

In her second assignment of error on cross-appeal, appellee contends that the trial court erred in finding that the arrearage owed to appellee of her marital

share of his pension should be paid by appellant at the nominal rate of $75 per month. Appellee argues that she is entitled to more than $75 per month in order to recover the past due amount within a reasonable time.

 The trial court has discretion to determine the amount one spouse must pay in order to reduce an arrearage owed by that spouse to the other spouse. See *Snyder v. Snyder* (1985), 27 Ohio App.3d 1, 3, 27 OBR 1, 3–4, 499 N.E.2d 320, 322–323 (child support arrearages); *Davis v. Davis* (1983), 12 Ohio App.3d 38, 40, 12 OBR 125, 127, 465 N.E.2d 917, 919–920 (spousal and child support arrearages).

 The record indicates that appellant retired in May 1992 and that his income was greatly reduced as a result of the retirement. Based upon our review of the record, we find that the trial court's determination that appellant should pay appellee $75 per month was a reasonable rate of repayment of the amount appellant was found to owe appellee. We cannot conclude that the trial court exhibited an unreasonable, arbitrary, or unconscionable attitude in permitting a gradual repayment of the arrearage owed. See *Blakemore*, 5 Ohio St.3d at 219, 5 OBR at 482–483, 450 N.E.2d at 1141–1142. Accordingly, appellee's second assignment of error on cross-appeal is overruled.

The judgment is reversed and the cause is remanded for a proper division of appellant's pension fund in accordance with this decision.

*Judgment reversed*
*and cause remanded.*

WILLIAM W. YOUNG P.J., concurs.

KOEHLER, J., dissents.

KOEHLER, Judge, dissenting.

The trial court, in ordering the division of the parties' property in this cause, established a coverture fraction to determine appellee's interest in appellant's pension. The QDRO ordered by the court was not filed. The order would have granted appellee one third of appellant's monthly pension payment upon his retirement.

At the time of the divorce, the present value of the parties' marital property is to be determined before an equal division is made. One third of the value of the pension account at the time of divorce will be significantly different from the value at the time of retirement. The spouse's percentage interest may be the same, but the greater the value of the account the greater the dollar value of the spouse's share. As with any other marital asset, the valuation and division should be made as the circumstances exist at the time of the divorce. The

division of pension account should be made on the basis of present value, not what the pension account might be at some future date.

This appeal clearly demonstrates the need for finality in such domestic relations matters. Appellee's need may have been greater at the time of divorce. Appellant's ability to pay appellee's interest may have been greater at the time of divorce. A reasonable method can be fashioned which considers the best method to ensure payment of appellee's interest or secure such payment.

Since I believe this court's concept for a fair and equitable division of the parties' property fails to implement the terms of the trial court's original order, I must dissent.