Defendant-appellant, Bobby R. Cox ("husband"), appeals the method the Warren County Court of Common Pleas, Domestic Relations Division, utilized to divide husband's State Teachers Retirement System ("STRS") pension in order to give plaintiff-appellee, Jean J. Cox nka Potts ("wife"), her marital share. We reverse and remand for proceedings not inconsistent with this opinion.
In 1989, husband and wife were divorced. As part of a 1989 divorce decree, the parties reached an equitable agreement on the distribution of all the marital assets, including husband's STRS pension. The pertinent language in the decree is as follows:
 Plaintiff and defendant shall enter a stipulated Qualified Domestic Relations Order ["QDRO"][1]
regarding retirement benefits otherwise payable to defendant as a result of his participation in the State Teachers' Retirement System of Ohio. In the event a stipulated Qualified Domestic Relations Order should not be honored by such entity, a separate order shall issue that such payments be made as nontaxable alimony to plaintiff so as to allow direct payment from the System to plaintiff at the time of distribution to defendant. Such order shall stipulate that from the benefits which would otherwise be payable to defendant the State Teachers' Retirement System shall pay directly to plaintiff 50 percent of the accrued benefits of defendant as determined by the plan as of November 22, 1988. This court shall reserve jurisdiction of this matter in order to implement the stated intent of the parties. (Emphasis added.)
After the divorce, husband continued to work and increase his STRS pension until 1996. At the age of fifty-five, husband decided to take early retirement as of July 1, 1996. On December 10, 1996, wife filed a motion for contempt alleging husband failed to make his required payment under the 1989 divorce decree. A magistrate held hearings on July 16 and August 27, 1997 on wife's share of husband's STRS pension. At the hearing, husband and wife both presented an expert on the proper method to divide husband's STRS pension.
On October 1, 1997, the magistrate concluded that the coverture fraction was the proper method to divide the pension and concluded that under this calculation wife was entitled to $1,329.83 per month. The coverture fraction takes the total years of marriage divided by the total years of husband's service. Under this method, wife receives half of the coverture fraction multiplied by the value of the pension. In this case, the magistrate calculated the coverture fraction of 21.39 years of marriage divided by husband's thirty years of service.
Husband filed objections and supplemental objections to the magistrate's decision. After a plethora of pleadings regarding the magistrate's decision, the trial court modified the magistrate's rulings on February 3, 1998. The trial court concluded that the magistrate failed to set off wife's future social security benefits, but otherwise adopted the magistrate's rulings. In a March 27, 1998 entry, the trial court recalculated the coverture fraction figure by using thirty-three years of service by husband and concluded wife was entitled to $1,217.45 per month.
From this ruling, appellant filed a timely notice of appeal and presents two assignments of error for our review:
Assignment of Error No. 1:
 The Trial Court's order violates the law forbidding post-decree modification of the division of marital property.
Assignment of Error No. 2:
 The trial Court erred in dividing Husband's pension benefit by using time-based coverture fraction applied to both pre-decree and post-decree pension benefits.
In the first assignment of error, appellant asserts that the trial court erred by modifying the division of husband's STRS pension without any jurisdiction. A trial court has broad discretion in distributing marital property including a pension benefit. Ricketts v. Ricketts (1996), 109 Ohio App.3d 746, discretionary appeal not allowed, 76 Ohio St.3d 1473. Pursuant to R.C. 3105.171(I), the trial court is empowered to equitably divide marital and separate property, but that division is not subject to later modification. Haller v. Haller (Mar. 18, 1996), Warren App. No. CA95-06-063, unreported, at 9, discretionary appeal not allowed, 76 Ohio St.3d 1434. "A party is not entitled to modification of an agreement simply because he or she has made a bad bargain." George v. George (Sept. 23, 1998), Summit App. No. 18866, unreported, at 5, citing Proctorv. Proctor (1997), 122 Ohio App.3d 56, 59. Instead, the court must determine the original intent of the parties, as evidenced by the contractual agreement. Proctor at 59. If there is any ambiguity, the trial court has the right to resolve "good faith confusion over the requirements" of a separation agreement. Bond v. Bond (1990), 69 Ohio App.3d 225, 228. In interpreting a separation agreement to resolve ambiguities, the trial court has broad, but not unlimited, discretion. Id.
Under the 1989 divorce decree, in the event the QDRO was not accepted by STRS, the trial court retained limited jurisdiction to "implement the stated intent of the parties." After the 1989 decree was entered, the Supreme Court of Ohio held that a QDRO is not properly issued to a state pension fund, which would include STRS. Erb v. Erb (1989), 75 Ohio St.3d 18. Therefore, when husband took early retirement and wife filed the motion for contempt, the trial court was confronted with enforcing the 1989 divorce decree.
Generally, the most equitable method of dividing pension benefits is the coverture fraction method. Hoyt v. Hoyt (1990),53 Ohio St.3d 177, 183. Due to the unique circumstances of any division of marital and separate property, this court has previously recognized several alternative methods for equitably dividing pension funds within the context of the overall property division. These methods include:
 (1) withdrawing the employee spouse's share of the funds from the pension plan and apportioning and distributing them at the time of the divorce; (2) determining the present value of the pension fund, calculating the nonemployee spouse's proportionate share, and offsetting that amount with other marital assets or a lump sum payment; (3) determining the present value of the pension fund, calculating the nonemployee spouse's proportionate share, and offsetting that amount with installment payments from the employee spouse; and (4) determining the appropriate percentage or amount of future benefits in view of the circumstances and ordering that amount to be paid directly from the fund to the nonemployee spouse if and when the payment matures.
Ricketts at 752.
However, when the trial court is interpreting a prior agreement, the court is not free to fashion an equitable remedy which is inconsistent with the contractual language adopted by the parties. As noted, public pension funds, such as STRS, are not subject to a QDRO. Therefore, future benefits cannot be paid directly to a non-employee spouse by STRS. Therefore, as in this case, trial courts must interpret, but not modify, prior separation agreements to find the intent of the parties.
In this case, the agreement delayed any division of the marital portion of the pension until husband retired. At that point, wife was entitled to fifty percent of accrued benefits as determined by the STRS plan as of November 22, 1988. The magistrate heard evidence from two expert witnesses on the proper method to divide husband's STRS pension. As the magistrate recognized, any distribution must be consistent with the language of the 1989 divorce decree or the trial court would be acting without jurisdiction by modifying the 1989 divorce decree.
Lance Melon, a pension evaluator, testified that all STRS pension benefits are calculated by two methods: (1) the 2.1% or defined benefit formula, and (2) money purchase formula. STRS takes the highest benefit payment from these two formulas. The 2.1% formula takes 2.1%, multiplied by the participant's years of employment, multiplied by the average of the participant's three highest years of salary. The money purchase formula converts a participant's contributions into an annuity and makes a monthly distribution. Melon calculated husband's STRS pension benefit by using all of the years of husband's employment with the state and used the coverture fraction method to calculate the share due to wife.
According to Pam Bunsci, expert for husband, as of November 22, 1988, STRS would have calculated husband's accrued benefits at $1,404 per month, beginning at age sixty. Based upon these calculations, wife would be entitled to $702 per month or fifty percent of the benefits, as determined under the STRS plan, as of November 22, 1988. In lieu of monthly payments, husband could have received a cash payout of the total benefits in his STRS account as of November 22, 1988, $42,587.78. In other words, Bunsci attempted to calculate husband's benefit options under the plan as of November 22, 1988. The trial court concluded the coverture fraction method was the preferred method of dividing an STRS pension and found Bunsci's expert testimony inconsistent with the coverture fraction method.
By applying the coverture fraction method to this case, the trial court exceeded its jurisdiction by modifying rather than interpreting the 1989 divorce decree. The term "accrued benefits" refers to retirement benefits a party would be entitled to receive as of a particular date, November 22, 1988. We find this language mandates a calculation of what appellant's benefits would have been had he stopped earning STRS benefits as of November 22, 1988. See George v. George
(Sept. 23, 1998), Summit App. No. 18866, unreported, at 7-8.
The evidence demonstrates that under the STRS plan, this calculation can be made. Although the STRS formulas are complex and may require further interpretation by expert witnesses upon remand, the trial court's solution of the coverture fraction is not an alternative consistent with the language of the November 22, 1988 agreement. If STRS accepted the QDRO entered by the parties, the coverture fraction method could not have been used to divide this pension because it is clearly inconsistent with the STRS formulas for determining a pension benefit as of a date certain. The role of the trial court was to determine how STRS would have calculated husband's accrued benefits as of November 22, 1988. By utilizing the coverture fraction, the trial court exceeded its jurisdiction. Thus, the trial court's order of February 3, 1998 is void.
Upon remand, the trial court must determine appellant's monthly accrued benefits back in November 22, 1988. The trial court should determine how STRS would have divided this pension had husband's pension contributions ended on November 22, 1988. Due to the limited jurisdiction of the trial court, the court cannot consider benefits husband accrued after that date, even if the result may, in retrospect, be more equitable.[2] Based upon the disposition of the first assignment of error, the second assignment of error is overruled as moot.
Judgment reversed and remanded for proceedings not inconsistent with this opinion.
YOUNG, P.J., and WALSH, J., concur.
[1] A QDRO is an order "which creates or recognizes the existence of an alternate payee's right to, or assign to an alternate payee the right to, receive all or a portion of the benefits payable with respect to a participant under a plan * * *." Hoytv. Hoyt (1990), 53 Ohio St.3d 177, 180-81. (Citations omitted.)
[2] Consistent with prior holdings, we reiterate that the coverture fraction method is generally the most equitable method to divide a pension earned by the employee spouse. However, any method used to interpret a prior separation agreement must be consistent with the language of that agreement or the trial court is acting without jurisdiction. R.C. 3105.171(I). Accordingly, our decision is predicated on the specific language utilized by the parties in the November 22, 1988 agreement and not any determination of the equity of that agreement.