Plaintiff-appellant, Diane M. Peterson, appeals a decision of the Butler County Court of Common Pleas, Domestic Relations Division, ordering her to repay a sum erroneously overpaid to her pursuant to a division of defendant-appellee, Steven Peterson's, profit sharing plan. Because we have determined that the trial court complied with our mandate in a previous appeal, we affirm.
The parties were divorced on July 24, 1996, following a lengthy marriage. The divorce decree provided in pertinent part that:
 3. The term of the parties' marriage is from October 22, 1977 through January 27, 1995, with the exception of the QDRO [qualified domestic relations order] for the defendant's retirement plan which shall be from October 22, 1977 through May 17, 1995.
The decree divided appellee's benefits from his employment with Philip Morris in three separate paragraphs. These benefits were his deferred profit sharing plan, at issue here; his salaried employee's retirement plan, not at issue here; and his restricted stock award program, not at issue here.
The decree provided (consistent with the paragraph quoted above) that appellant had an interest in appellee's retirement
plan, including any interest or dividend, which was accrued during October 22, 1977 through May 17, 1995. However, for the profit sharing plan, the trial court did not specify an effective date. The court did note that the profit sharing plan had a value of approximately $260,000 with loans against it of approximately $42,000. The decree then stated:
 [T]hat leaves $218,000.00 plus any interest and/or dividends which accrued during the term of the parties' marriage in the Profit Sharing Plan to be divided evenly between the parties and shall be divided immediately.
The decree further provided that a qualified domestic relations order ("QDRO") should be issued for the profit sharing plan and that the court would retain jurisdiction in the event that there was a defect in the QDRO's wording which "precluded the intended outcome."
Although the decree had not specified a date for division of the profit sharing plan, the QDRO filed in the court on February 5, 1997 quoted from the paragraph in the divorce decree on the profit sharing plan, and further provided:
Amount of Alternate Payee's [appellant's] Benefit:
 This Order assigns to Alternate Payee a portion of the participant Total Account Balance under the Plan in an amount equal to $109,000.00, effective (emphasis added) as of May 17, 1995 or the closest valuation date thereto, plus any interest and investment earnings or losses attributable thereon for periods subsequent to May 17, 1995 (emphasis sic) until the date of total distribution.
Appellee then brought a motion "to amend previously submitted [QDRO] for deferred profit sharing plan" requesting the trial court to order that the date of November 30, 1995, be substituted for the May 17, 1995 date. The trial court denied this motion, stating that it did not retain jurisdiction over property division, although it "did intend at trial and in its decision to reflect the date, November 30, 1995 for the profit sharing plan and the decree does not appear consistent with that decision."
This court reversed the trial court's denial of appellee's motion to amend the QDRO in Peterson v. Peterson (Apr. 6, 1998), Butler App. No. CA97-09-169, unreported ("Peterson I"). InPeterson I, we held that although a trial court does not have continuing jurisdiction to modify a marital property division incident to a divorce decree,[1] it is permitted to clarify the original property division so as to effectuate its judgment.Haller v. Haller (Mar. 18, 1996), Warren App. No. CA95-06-063, unreported.
The trial court held a hearing on this matter following our remand. According to a letter from Phillip Morris submitted into evidence, the amount awarded (or segregated) to appellant if the November 30 date had been used would have been $135,360.44; while the amount taken from appellee's account based on the May date was $166,130.22. The difference in the two figures was due to the passive growth (interest and earnings) on the investment. The base figure of $109,000 was unchanged. The trial court ordered that appellant should repay $31,769.78 to appellee immediately.[2]
Appellant has raised one assignment of error:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF PLAINTIFF-APPELLANT WHEN IT CHANGED THE AMOUNT OF MONEY SHE IS TO RECEIVE FROM DEFENDANT'S PROFIT SHARING PLAN.
Appellant claims that the trial court in the divorce decree had ordered that she was to receive $109,000 from the profit sharing plan. She claims that figure is not subject to modification and that "[w]hether the effective date was to be in May or November should have no bearing on the net amount that [she] was to receive." Appellant is partially correct — the base figure of $109,000 is not subject to modification, as we specifically held in Peterson I. However, the total amount of passive growth on that figure is based on the effective date chosen[3] and therefore the net figure (over the $109,000) could and did change following our remand. We held in Peterson I
that the trial court could change the effective date if the QDRO's date was based on a clerical error.[4] Because the trial court complied with our mandate in Peterson I, appellant's assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., and WALSH, J., concur.
[1] See Ricketts v. Ricketts (1996), 109 Ohio App.3d 746,751.
[2] The trial court may have made a clerical error as $166,130.22 minus $135,360.44 equals $30,769.78, not $31,769.78; however, the parties have not briefed this matter.
[3] We noted in Peterson I that distribution of the November value as of the May date would result in appellee receiving a "larger proportion of the profit sharing plan" and that such a result was "contrary to the expressed intent of the trial court." Peterson I
at n. 2. Our remand in Peterson I allowed the trial court to correct the clerical error that had occurred. The result is thus consistent with our previous decision.
[4] Although we affirm the trial court's decision without modification, we note that the best way to effectuate its judgment would probably be to simply amend the QDRO to change the effective date listed there from May 17, 1995 to November 30, 1995.