OPINION
Defendant-appellant Mary L. Lough appeals from the October 29, 1998, Opinion and Judgment Entry of the Licking County Court of Common Pleas, Domestic Relations Division.
 STATEMENT OF THE FACTS AND CASE
On March 17, 1995, appellee Joseph L. Lough filed a complaint for divorce against appellant in the Licking County Court of Common Pleas, Domestic Relations Division. Appellant filed an answer and counterclaim for divorce on April 7, 1995. The parties, who had been married since 1985, had no children, Appellant Mary L. Lough filed an answer and cross-complaint on April 7, 1995. On April 11, 1995, appellee filed an answer to the counterclaim. The matter came on for hearing before the trial court on January 11, 1996. Pursuant to an Opinion and Judgment Decree of Divorce filed on March 8, 1996, the trial court granted the parties a divorce and ordered a division of the marital property. One of the marital assets distributed by the court was a business known as L L Painting. L L Painting had been purchased by appellee in 1969 and operated by him until it was placed in appellant's name in 1992 after appellee suffered a debilitating stroke. Pursuant to the March 8, 1996, Judgment Decree, the trial court awarded a 49% interest in L L Painting to appellee and a 51% interest in the business to appellant. Furthermore, the court ordered that: (1) as compensation for his interest in the business, appellee receive the sum of $1,300.00 per month each month as long as he had an interest in said business; (2) appellant receive an equivalent sum each month; (3) all profits above those two amounts be divided 60% to appellant and 40% to appellee, and (4) appellant, in operating L L Painting, pay appellee's medical debts to two hospitals. Appellant was to continue running the business, but could not encumber any asset of the business or commit to any indebtedness of $10,000.00 or more without the approval of either the court or of appellee. Since, at the time of the divorce, L L Painting had $47,700.00 in debt, L L Painting's total indebtedness, therefore, could not exceed $57,700.00. Finally, in order to compensate appellant for a disparity in the division of the rest of the parties' property (not including L L Painting), the trial court directed appellee to issue a promissory note to appellant in the amount of $28,000.00, without interest. The trial court, in the March 8, 1996, Judgment Decree held that if appellant "fails to maintain the business or it ceases operation, the [appellee's] $28,000.00 obligation to [appellant] will be voided." On April 8, 1996, appellant appealed from the March 8, 1996, Opinion and Judgment Decree, arguing that the trial court erred in dividing L L Painting between the parties and in failing to place a value on such business. Appellant also claimed that the trial court erred in failing to place a due date and rate of interest on the $28,000.00 promissory note. Pursuant to an Opinion filed on November 18, 1996, in case number 96 CA 48 (Joseph L. Lough v. Mary Lough), this court found that the trial court had abused its discretion in dividing L L Painting between the parties as it did, holding that "[a]bsent any determination of the present value of L L Painting, we believe the trial court's order that appellee receive $1,300.00 per month plus 40% of the business' profits without placing any termination date on said order is arbitrary because it prevents an accurate calculation of the parties' respective economic positions relative both to this particular asset and in light of the overall division of the martial property." This court also sustained in part appellant's assignment of error regarding the promissory note, finding that the trial court's failure to specify when or how the note became payable constituted error. For such reasons, this court reversed and remanded those portions of the March 8, 1996, Judgment Entry relating to the trial court's division of L L Painting and the promissory note. Appellee, on January 9, 1997, filed a motion with the trial court, requesting in part, that appellant be found in contempt for failing to pay appellee $1,300.00 per month as his share of the profits of the business as ordered in the Divorce Decree and for failing to pay specified debts, including his medical bills, as previously ordered by the court. An identical motion was filed by appellee on May 12, 1997. An evidentiary hearing was held before the trial court on May 2, 1997, concerning the remanded issues. Pursuant to a Judgment Entry filed on May 6, 1997, the trial court had stated that the hearing set for May 2, 1997, "will be restricted to the issue of the value of the business." At the May 2, 1997, hearing, appellee's expert placed a value of $158,000.00 on L L Painting whereas appellant's expert, who testified via deposition, indicated that such business was worth nothing based on its high debt ratio and earning history and the fact that anyone wanting to enter the painting business could go out and start their own business rather than buying L L Painting. Pursuant to a Judgment Entry filed on June 10, 1997, the trial court found that the value of L L Painting was $138,770.58. While the trial court awarded the business to appellee, it further found that appellant had a one-half interest in L L Painting worth $69,385.29. Of such sum, appellee was ordered to pay appellant $14,385.29 within 21 days of the filing date of the June 10, 1997, entry with the $55,000.00 balance payable to appellant in five equal annual installments of $11,000.00 plus 7% interest due July 1st of each year. The trial court further determined that appellant had incurred $21,385.00 in debt to Wells Fargo Bank that was not authorized by either the court or appellee, as required by the March 8, 1996, Judgment Decree. As is stated above, the decree required any amounts over $10,000.00 to be approved by either the court or appellee. Since the trial court in its decree had permitted up to $57,700.00 in debt to be incurred in the operation of L L, appellant, pursuant to the June 10, 1997, Judgment Entry was ordered to pay $6,111.00 of the Wells Fargo indebtedness since it was not authorized (total debt of $63,811 minus the "allowable" debt of $57,700 equals $6,111). The trial court, in its June 10, 1997, Judgment Entry, also addressed the issue of the $28,000.00 promissory note which was established to equalize the parties' marital property division. The trial court ordered appellee to repay the note at the rate of $5,000.00 per year "with the entire balance to be paid to [appellant] upon the sale of either parcel of real estate located on Lees Road, or the [appellee's] remarriage or death whichever occurs first." On June 16, 1997, appellant filed a Notice of Appeal of the June 10, 1997, Judgment Entry and from the March 8, 1996, Opinion and Judgment Decree of Divorce. (Joseph L. Lough v. Mary Lough, case number 97-CA-75). The motions to stay execution of the judgment entered on June 10, 1997, which were filed by both parties, were denied by the trial court pursuant to Judgment Entries filed on June 18, 1997, and August 11, 1997. Pursuant to a Judgment Entry filed of September 18, 1997, this court granted appellant's motion to dismiss her appeal in case number 97-CA-75 with prejudice. On June 25, 1997, appellee took over L L Painting from appellant. On July 22, 1997, appellant filed a "Post-Decree Motion for Contempt" against appellee, seeking an order from the trial court finding appellee in contempt for refusing to pay appellant the amounts due to her under the June 10, 1997, Judgment Entry. An order was filed on July 22, 1997, directing appellee to appear on September 10, 1997, and show cause why he should not be held in contempt of court for his failure to comply with the June 10, 1997, Judgment Entry. Appellant on September 8, 1997, filed a memorandum in opposition to appellee's January 9, 1997, Motion for Contempt. Appellee in such motion, had requested that appellant be held in contempt for failing to pay him $1,300.00 per month as ordered by the Divorce Decree. An oral hearing was held before a Magistrate on December 19, 1997, on numerous pending motions. Pursuant to a decision filed on January 27, 1998, the Magistrate recommended that appellant be held in contempt for failing to pay appellee the monthly installments of $1,300.00 but not in contempt for failing to pay appellee's hospital bills since, while appellant was operating the business, she made monthly payments on such bills. Pursuant to his January 23, 1998, Decision and a Supplemental Decision filed on February 9, 1998, the Magistrate further recommended that appellee be held in contempt for failing to pay appellant the sums owed her under the promissory note, which included the $28,000.00 promissory note and the first payment due on the $69,385.29 that appellee owed appellant for her share of L L Painting. Both parties subsequently filed objections to the Magistrate's two decisions. Pursuant to an Opinion and Judgment Entry filed on October 29, 1998, the trial court: (1) sustained appellee's objection to the Magistrate's conclusion of law regarding the medical bill payments finding appellant, by clear and convincing evidence, in contempt for failing to pay appellee's medical bills; (2) overruled appellant's objection to the Magistrate's conclusion that appellant was in contempt for failing to make the $1,300.00 monthly payments; (3) found that despite the $57,700.00 debt ceiling imposed on L L Painting by the court, appellant had again exceeded the debt limit placed upon L L Painting by $4,916.00 and that appellant was personally responsible for such amount; (4) sustained appellee's objection to the Magistrate's finding that appellee was in contempt for failing to pay the $28,000.00 promissory note, finding that, under the Divorce Decree, appellant had forfeited her right to the note by failing to maintain the business; and (5) held that appellee could not be held in contempt for failing to pay appellant $69,385.29 for her share of L L Painting since "[i]t would be unjust and unfair to force [appellee] to remit to the [appellant] the full value of her shares of the business when it was her efforts or lack thereof that plummeted the value of the business to rock bottom." It is from the October 29, 1998, Opinion and Judgment Entry that appellant prosecutes this appeal, raising the following assignments of error:
ASSIGNMENT OF ERROR NO. 1
 THE TRIAL COURT ERRED AND EXCEEDED IT [SIC] JURISDICTION WHEN, BY ITS ORDER DATED OCTOBER 29, 1998, IT MODIFIED THE PROPERTY DIVISION CONTAINED IN ITS FINAL JUDGMENT ENTRY OF JUNE 10, 1997, BY ELIMINATING THE OBLIGATION OF APPELLEE TO PAY APPELLANT FOR HER SHARE OF THE MARITAL BUSINESS SET FORTH IN THAT JUDGMENT.
ASSIGNMENT OF ERROR NO. 2
 THE TRIAL COURT ERRED AND EXCEEDED IT [SIC] JURISDICTION WHEN, BY ITS ORDER DATED OCTOBER 29, 1998, IT EXERCISED JURISDICTION IT RETAINED UNDER THE DIVORCE DECREE OF MARCH 8, 1996, TO MODIFY THE PROPERTY DIVISION CONTAINED IN ITS FINAL JUDGMENT ENTRY OF JUNE 10, 1997, BY ELIMINATING THE OBLIGATIONS OF APPELLEE TO PAY APPELLANT THE $28,000.00 NOTE.
ASSIGNMENT OF ERROR NO. 3
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN, BY ITS ORDER DATED OCTOBER 29, 1997, IT ELIMINATED THE OBLIGATION OF APPELLEE TO PAY APPELLANT THE $28,000.00 NOTE.
ASSIGNMENT OF ERROR NO. 4
 THE TRIAL COURT ERRED AND EXCEEDED IT [SIC] JURISDICTION WHEN, BY ITS ORDER DATED OCTOBER 29, 1998, IT MODIFIED THE PROPERTY DIVISION CONTAINED IN ITS FINAL JUDGMENT ENTRY OF JUNE 10, 1997, BY FINDING APPELLANT RESPONSIBLE FOR $4,916.00 TO THE BUSINESS.
ASSIGNMENT OF ERROR NO. 5
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN, BY ITS ORDER DATED OCTOBER 29, 1998, IT FOUND APPELLANT RESPONSIBLE FOR $4,916.00 TO THE BUSINESS.
ASSIGNMENT OF ERROR NO. 6
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO FIND APPELLEE IN CONTEMPT FOR FAILING TO MAKE THE PAYMENTS HE WAS ORDERED TO MAKE UNDER THE JUNE 10, 1997, JUDGMENT ENTRY.
ASSIGNMENT OF ERROR NO. 7
 THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FOUND APPELLANT IN CONTEMPT FOR FAILING TO MAKE THE PAYMENTS SHE WAS ORDERED TO MAKE UNDER THE MARCH 8, 1996, DIVORCE DECREE.
 I
Appellant in her first assignment of error, argues that the trial court, in its October 29, 1998, entry, modified the property division contained in the court's final Judgment Entry of June 10, 1997, when it lacked jurisdiction to do so. We agree. R. C.3105.171 establishes guidelines for the trial court when dividing marital and separate property. R.C. 3105.171 (I) states that "[a] division or distribution of property or a distributive award made under this section is not subject to future modification by the court." Such statute codified the decision of Wolfe v Wolfe (1976), 46 Ohio St.2d 399 wherein the Ohio Supreme Court held that a property settlement award is not subject to modification after judgment. A trial court, however, may explain a property award ruling. Detweiler v. Detweiler (March 30, 1998), Stark App. No. 1997CA00181, unreported. The trial court, in its June 10, 1997, Judgment Entry ordered appellee to pay the sum of $69,385.29 to appellant for her one-half interest in L L Painting, which the trial court had valued at $138,770.58. However, in its October 29, 1998, Judgment Entry, the court held that "[i]t would be unjust and unfair to force the [appellee] to remit to the [appellant] the full value of her share of business when it was her efforts or lack thereof that plummeted the value of the business to rock bottom." The trial court, finding that appellant had, through indifference, neglect, lack of interest or purpose, dissipated all of her share of the business, and had, therefore, eliminated appellee's obligation to pay appellant the $69,385.29. The trial court essentially found that the business had no value. By doing so, the court clearly modified the property division set forth in its June 10, 1997, Judgment Entry in contravention of R.C. 3105.171(1) by reducing the value of L L Painting from $138,770.58 to zero and by holding that appellant was entitled to nothing for her share of L L Painting. The appellee had not filed a 60(B) Motion to Vacate the June 10, 1997, finding of the trial court in regard to the value of the business or as to appellee's obligation to pay appellant $69,385.00 for appellant's half. Appellee's motion of August 4, 1997, requests that appellee be granted a "credit" for all "unpaid bills" (emphasis added) of the company which appellant had left for appellee to pay when appellee took over the business on June 25, 1997. Counsel for appellee did not even request such a remedy (of finding the business to have zero value) at the evidentiary hearing before the Magistrate. Counsel for appellee requested a set-off when she argued the following in her opening statement before the Magistrate: "We basically feel that Mr. Lough is entitled to a credit against the purchase of [appellant's] equity in the business in the amount of Forty Five Thousand Two Hundred and Thirty Six Dollars." (Transcript page 7.) The trial court erred in finding that appellant had "essentially dissipated all of her share of the business" (10/29/98 entry) since the trial court issued its divorce decree. This finding is tantamount to saying that because of circumstances created by the appellant, appellant's share of the business has decreased from $69,385.29 to zero. This is a modification of the prior order of property division and is not permitted by statute. What was properly before the trial court was the issue of a credit or set-off which is very different from a motion to vacate an order of property division or a motion to modify it (which is not permitted by law). A motion to vacate or a motion to modify requests, as the ultimate remedy, that prior court orders be set aside or changed. A request for set-off or credit does not request an order be changed or set aside. What it requests is for the trial court to determine that a party has not complied with prior court orders and as a result of that non-compliance money is owed to the other party and that that money owed should be credited against money owed by the other party under prior orders. The orders themselves are not effected. But even under this analysis, the trial court's ruling must fail. In order for the trial court to find that the appellant is no longer owed any of the $69,385.29 from appellee for appellant's portion of the business, the trial court would have to make specific findings that the appellant owes the appellee $69,385.29 under prior orders of the trial court. There is not sufficient evidence in the record to support a finding that appellant owes appellee $69,385.29 under prior orders of the trial court. Therefore, even under a set-off or credit theory, the trial court abused its discretion in finding that appellant's portion of the business had been dissipated by her to zero. Since the trial court lacked jurisdiction to modify the parties' property settlement, appellant's first assignment of error is sustained.
 II, III
Appellant, in her second assignment of error, submits that the trial court also exceeded its jurisdiction when, pursuant to its October 29, 1998, order, it modified the property division contained in the June 10, 1997, final Judgment Entry by eliminating appellee's obligation to pay appellant the $28,000.00 note. In the alternative, appellant, in her third assignment of error, argues that the trial court abused its discretion by eliminating appellee's obligation to pay appellant such amount. We will address appellant's second assignment of error first. The trial court, in the Opinion and Judgment Decree of Divorce that was filed on March 8, 1996, ordered that appellee issue a $28,000.00 promissory note to appellant "which will represent the [appellant's] remaining share in the real estate offset by the additional financial accounts and the marital portion of her pension she received." The court further stated in paragraph 11 on page 10 of the decree that appellee's $28,000.00 obligation to appellant would be voided if appellant "fails to maintain the business or it ceases operation." Subsequently, in its October 29, 1998, Opinion and Judgment Entry the court held that appellant had forfeited the right to the $28,000.00 note since the "prerequisites exist to warrant implementing paragraph 11, page 10, of the divorce decree." The trial court specifically found that appellant's efforts or lack thereof had plummeted L L Painting's value to "rock bottom" and the only reason the business did not cease to exist was because of appellee's efforts to revitalize it with an "infusion of capital." As has been stated above, a trial court does not have continuing jurisdiction to modify a property division incident to a divorce. See Ricketts v. Ricketts (1996), 109 Ohio App.3d 746. By holding in its October 29, 1998 Judgment Entry, that appellee was no longer obligated to pay appellant the $28,000.00 note because the appellant had rendered L L Painting worthless, the trial court improperly modified its previous property division that dealt with all the other assets of the marriage except L L Painting. We distinguish the situation sub judice from our ruling in Martin. See Martin v. Martin 95 CAF 11075, unreported, 5th App. District, Delaware County, November 18, 1996. In Martin, we found that the trial court did not abuse its discretion in reserving jurisdiction over the sale of real estate by providing if the appellant sold the residence within two years of the Judgment Entry and the proceeds of the sale of the residence were substantially higher than $90,000.00, then the trial court retained jurisdiction over the distribution of the proceeds of the sale. We found that despite the language in R.C. 3105.171(I) that provides a property division is not subject to future modification, the trial court could retain jurisdiction by specifically stating so in the judgment entry. In retrospect we find that we did not need to draw that conclusion to make the ruling we made in Martin. In Martin, the trial court reserved jurisdiction to make a future division of property if and when marital property of uncertain current value became known. This future division did not affect property already divided under the trial court's decree of divorce. There is more than a semantic distinction between future modification of a property division and reserving jurisdiction to divide property in the future when its value becomes known. The latter in reality involves continuing the issue of division of marital property to a date in the future. The former involves a modification of a property division already issued by the court. We find that the action of the trial court in the case sub judice violates R.C.3105.171(I) and that the trial court did not have jurisdiction to issue the order in regard to the voiding of the $28,000.00 note if the business ceased to exist. Therefore, the trial court did not have jurisdiction to issue an order eliminating the $28,000.00 obligation because that authority to eliminate the obligation emanated from an order that the trial court had no jurisdiction to issue in the first place. It should be pointed out that the parties were not before the trial court on a 60(B) motion to vacate prior orders of the trial court, or were they before the court on any motion for a credit or set-off in regard to the $28,000.00. No written or oral pleadings could be interpreted as a 60(B) motion in regard to the $28,000.00 obligation or as a request for a set-off or credit against the $28,000.00 obligation. As a matter of fact, in opening statements before the Magistrate at the evidentiary hearing, counsel for appellee stated, "[w]e believe the evidence will show that by July of next year [appellee] will be able to make a significant payment to [appellant] on the $28,000.00 that is owed to her . . .". In other words, the trial court, on its own initiative, decided to void the $28,000.00 obligation (a) without jurisdiction to do so and (b) without being requested to do so. Therefore, we conclude that the trial court erred and exceeded its jurisdiction when, by its order dated October 29, 1998, it exercised jurisdiction it retained under the divorce decree of March 8, 1996, to modify the property division contained in its final Judgment Entry of June 10, 1997, by eliminating the obligation of appellee to pay appellant the $28,000.00 note. We, therefore, sustain appellant's second assignment of error and find that we need not address appellant's third assignment of error.
 IV, V
Appellant, in her fourth assignment of error, also claims that the trial court improperly exceeded its jurisdiction when, in its October 29, 1998, Order, it modified the property division contained in its June 10, 1997, final Judgment Entry by finding appellant personally responsible for $4,916.00 to L L Painting. In the alternative, appellant, in her fifth assignment of error, asserts that the trial court abused its discretion by finding appellant personally responsible for the same. This court, pursuant to an Opinion filed on November 18, 1996, reversed and remanded "those portions of the March 8, 1996, Judgment Entry of the Court of Common Pleas of Licking County relating to the trial court's division of L L Painting . . .". The opinion from this Court of Appeals states: " . . . we find the trial court's finding that no present value of said business was established during the course of the proceedings to be problematic." (Lough v. Lough, unreported, 5th District Court of Appeals, 96CA48, 11/18/96) Upon remand, the trial court held an evidentiary to establish the value of L L Painting. The trial court held in its June 10, 1997, Judgment Entry that the business had a value of $138,770.58. This valuation was based on $57,700.00 in debts to the business. The trial court found that there was a debt structure of $47,700.00 for the business at the time of the divorce and that the appellant was authorized to incur additional debt in operation of the company of up to $10,000.00 pursuant to the divorce decree. The decree specified that the appellant could not "encumber any asset of the business or commit to any significant indebtedness ($10,000 or more) without approval of [the trial court] or the [appellee]." In the June 10, 1997, Judgment Entry, the trial court additionally found that, since the divorce, the appellant had incurred more than $57,700.00 in debt on the business. Implicit in the trial court's June 10, 1997, Judgment Entry is that the total debt on the business at the time of the evidentiary on the business valuation (May 2, 1997) was $63,811.00. This amount was made up of a $21,385.00 debt to Wells Fargo Bank on a line of credit and a $42,426.00 debt to Bank One. The trial court then found that the appellant would be exclusively responsible for $6,111.00. The trial court stated, "[s]ince the [trial court] via its decree permitted up to $57,700.00 in debt to be incurred in the operation of the business, the [trial court] determines that $6,111.00 of the Wells Fargo indebtedness was not authorized and must be paid exclusively by the [appellant]." Based on evidence presented to the Magistrate on December 19, 1997, regarding the various motions of the parties, the trial court found (in its October 29, 1998, entry) the indebtedness on the business (not including accounts payable) "was a Bank One line of credit at $30,538.00 and Wells Fargo at $32,078.00. The trial court further found that, despite the $57,700.00 debt ceiling, the appellant had "again exceeded the debt limit placed upon the business operation by $4,916." (emphasis added.) The trial court then found appellant "personally responsible for the $4,916 to the business." The trial court also found that appellant had "presented nothing to reflect payment of the $6,111 [appellant] was instructed to pay Wells Fargo to reduce the debt to $57,700.00." In essence, what the trial court did was order appellant to pay an additional $4,916.00 over the $6,111.00 when the actual total debt on the Wells Fargo and Bank One debts had decreased from the evidence presented on May 2, 1997, to the evidence presented on December 19, 1997. To order the appellant to pay $4,916.00 and $6,111.00 is an abuse of discretion. (The appellant should still be responsible for $6,111.00 of the Wells Fargo because she has not paid that as previously ordered.) The trial court made it clear in its June 10, 1997, entry that the appellant could incur up to $57,700.00 in debt in the operation of the business and that would not change the valuation of the business. Appellant, through the operation of the business, paid down some of the Bank One debt but increased the Wells Fargo. However, if one subtracts $6,111.00 (the personal responsibility of appellant) from $62,616.00 (total debt to Bank One and Wells Fargo on 12/19/97), one gets $56,505.00, which is less than the $57,700.00 debt ceiling set by the trial court. Therefore, as to the Wells Fargo and Bank One debts, the valuation of the business has not been effected by the redistribution of the debt between the two accounts from the May 2, 1997, hearing to the December, 1997, hearing. Appellant's fifth assignment of error is, therefore, sustained. It was an abuse of discretion for the trial court to order the appellant to be responsible for the additional $4,916.00. Since the fifth assignment of error is sustained, the court finds appellant's fourth assignment of error to be moot.
 VI
In her sixth assignment of error, appellant contends that the trial court abused its discretion by refusing to find appellee in contempt for failing to make the payments that he was ordered to make to appellant under the June 10, 1997, Judgment Entry. Whether or not to hold a person in contempt is within the sound discretion of the trial court. See State ex rel. Ventrone v. Birkel (1981)65 Ohio St.2d 10, 11. In order to find an abuse of discretion, we must find that the trial court's decision was unreasonable, arbitrary, and unconscionable. Blakemore v Blakemore (1983),5 Ohio St.3d 217. Pursuant to the terms of the June 10, 1997, Judgment Entry, appellee was ordered to pay appellant the sum of $69,385.29 for her one-half interest in L L Painting. The June 10, 1997, entry specifically provided that, as partial payment for appellant's share of the business, appellee was to pay appellant the sum of $14,385.29 "within 21 days of the filing date of this entry" and the balance of $55,000.00 in five equal installments due on July 1st of each year. The first installment was due on July 1, 1998. To equalize the parties' property division, appellee also was ordered to pay appellant a $28,000.00 promissory note at the rate of $5,000.00 per year with the entire balance due "upon the sale of either parcel of real estate located on Lees Road or the plaintiff's remarriage or death whichever occurs first.". At the time such entry was filed, the Lees Road property had already been sold. In his February 9, 1998, Decision, the Magistrate found that appellee had failed to make the above payments called for in the June 10, 1997, Judgment Entry and recommended that appellee be held in contempt. However, the trial court, in its October 29, 1998, Judgment Entry, declined to hold appellee in contempt for failing to pay the $28,000.00, finding that since the Lees Road property was sold prior to the court's June 10, 1997, Judgment Entry, "it is impossible to find someone in contempt for what occurred before the court order existed." We agree. The trial court also declined to hold appellee in contempt for nonpayment of the first payment of $14,385.29 on the $69,385.29 business note stating in its October 29, 1998, Judgment Entry that "upon finding the status of the business as of June 25, 1997, when [appellee] assumed ownership it is understandable that the [appellee] withheld payment until further clarification from the court could be obtained." In so ruling, the trial court emphasized that appellant, through her "indifference, neglect, lack of interest or purpose, had "seriously eroded the viability of L L Painting." Contempt has been defined as the disregard for judicial authority. State v. Flinn (1982), 7 Ohio App.3d 294. Contempt may be either direct or indirect. In re: Purola (1991), 73 Ohio App.3d 306, 310. Direct contempt occurs in the presence of the court, while indirect contempt occurs outside its immediate presence. Id. R.C.2705.02, on indirect contempt, provides in relevant part, that "a person guilty of any of the following acts may be punished as for a contempt: (A) Disobedience of, or resistance to a lawful writ, process, order, rule, judgment, or command of a court or an officer." Thus, the knowing failure to obey the lawful order of a court may be grounds for a finding of contempt. Arthur Young Co. v. Kelly (1990), 68 Ohio App.3d 287. "Contempt is further classified as civil or criminal depending on the character and purpose of the contempt sanctions." Purola, supra, at 311. Criminal and civil contempt serve different ends within the judicial system, and are governed by different rules. Civil contempt is designed to benefit the complainant and is remedial in nature. Id. Thus, an individual charged with civil contempt must be permitted to appear before the court and purge himself of the contempt by demonstrating compliance with the court's order he is charged with violating. Id. at 312. Criminal contempt, on the other hand, is usually characterized by unconditional fines or prison sentences. Id. at 311. In the case of criminal contempt, there is no requirement that the person charged be permitted to purge him or herself of the contempt. Brown v. Executive 200, Inc. (1980), 64 Ohio St.2d 250. The absence of an opportunity to purge oneself when charged with criminal contempt is appropriate because the purpose of criminal contempt is punitive. Id. In the case sub judice, appellee clearly was in indirect civil contempt under R.C.2705.02 since he knowingly violated a valid court order. See Arthur Young Co., supra. Appellant specifically violated the trial court's order by failing to make the payments that he was ordered to make to appellant under the June 10, 1997, Judgment Entry. There is no dispute that appellee did not pay appellant $14,385.26 for part of her share of the business within 21 days of the filing date of the June 10, 1997, Judgment Entry. Appellee explained his failure to make such a payment by arguing that he should receive a set-off or credit for the amounts the appellant owed the appellee (for appellant's failure to pay appellee $1,300/month) and/or for the amounts that appellant had increased the debt on the business. However, while we find that appellee was technically in indirect contempt of court under R.C. 2705.02 as a result of his failure to pay appellant the $14,385.26 for her share of the business, we find that the trial court was not required to hold appellee in contempt under R.C. 2705.02 and did not abuse its discretion in declining to do so. R.C. 2705.02
clearly specifies that a person guilty of disobedience of a court order "may" be punished as for a contempt. Thus, there is no requirement that the trial court find appellant in contempt. Based upon appellee's request for a set-off on the amounts that he owed to appellant, we find that the trial court did not abuse its discretion in declining to hold appellee in contempt for failing to pay appellant the first payment due for her share of the business. The trial court's decision was not arbitrary, unreasonable or unconscionable. Appellant's sixth assignment of error is overruled. VII In her final assignment of error, appellant argues that the trial court abused its discretion when it found her in contempt for failing to make the payments she was ordered to make under the March 8, 1996, Divorce Decree. Pursuant to the terms of the Divorce Decree, the appellant was ordered to pay appellee's hospital bills out of the business and to make monthly payments of $1,300.00 to appellee from the net profits of L L Painting. The Magistrate, in his January 27, 1998, Decision, recommended that appellant be held in contempt for failing to make the $1,300.00 monthly payments to appellee but not for any failure to pay appellee's medical bills. With respect to the medical bill payments, the trial court, after finding appellant to be in contempt of court "by clear and convincing evidence," sentenced appellant to ten (10) days and fined her $500.00. Both the fine and sentence were suspended. In so holding appellant in contempt, the trial court stated in its October 29, 1998, Judgment Entry as follows: "At the initiation of this divorce, the defendant [appellant] averred that she was making $400.00 per month payments on plaintiff's [appellee's] medical bills. This was in early 1995. For the defendant [appellant] to drop these payments to one-eighth of the former amount but keep paying Mr. Jagger's health insurance reimbursement of $260.00 per month is unconscionable."
We do not find that the trial court abused its discretion in finding appellant in contempt for failing to pay appellee's hospital bills since such decision was not unconscionable, unreasonable or arbitrary. The Magistrate, in his January 27, 1998, Decision, also recommended that appellant be held in contempt for failing to pay appellee the monthly installments of $1,300.00. While the trial court, in its October 29, 1998, Judgment Entry stated that the Magistrate's Finding of Fact No. 8 "shall be clarified to reflect that [appellant] failed to make the $1,300.00 payments in 1997", it did not specifically find appellant in contempt or specifically adopt the Magistrate's recommendation as to that contempt. Appellant's sixth assignment of error is, therefore, overruled.
The Judgment of the Licking County Court of Common Pleas, Domestic Relations Division, is reversed in part and sustained in part.
By Edwards, J. Gwin, P.J. and Farmer, J. concur