Plaintiff-appellant, Frank A. Apicella, appeals a decision rendered by the Belmont County Common Pleas Court, Division of Domestic Relations, whereby defendant-appellee, Susan M. Apicella, and appellant were granted a division of their marital assets pursuant to a judgment entry granting both parties a divorce. Appellee was also granted spousal support.
The parties were married in Bellaire, Ohio on March 11, 1972. (Tr. 10). Three children were born as issue of the marriage, two of whom are emancipated. (Tr. 11). The other child, Adam Apicella, was born on June 24, 1981. (Tr. 11)
Testimony adduced at trial showed that appellant has been employed with the Ohio Edison Company for roughly twenty-three years and earns approximately $50,000 per year. (Tr. 16, 9) Appellant also has operated a lawn care business for approximately eight or nine years. (Tr. 19). The income from this business is disputed. At times, appellant stated that his income was $8,229.28 for five months of work, while appellee believed that the income from the lawn care business ranged from $15,000 to $20,000 over a six-month period. (Tr. 20, 78).
Appellee is employed by the United Mine Workers Retirement Fund, Pennsylvania, and earns approximately $20,000 per year. (Tr. 62, 9). Appellee has been employed in her current job for approximately one and one-half years. (Tr. 62). Neither party holds an advanced educational degree. (Tr. 17, 65)
The parties entered into several stipulations as to the value of certain properties. The parties agreed that the home was valued at $95,000.00 with $55,000.00 in mortgages, leaving an unrealized equity of $40,000. (Tr. 4, 24). Appellant's pension at Ohio Edison was stipulated in the amount of $50,616.78. (Tr. 4). There was also a balance in a deferred savings plan, which minus certain loans against it leaves a balance of approximately $7,800. (Tr. 6)
Other matters were not stipulated. The parties presented little evidence on the value of the lawn care business equipment. (Tr. 46). However, as noted above, both parties presented conflicting evidence as to the income associated with the lawn care business. Appellant claimed that his 1989 Harley Davidson motorcycle was valued at approximately $5,600 while appellee believed it was valued at $8,500. (Tr. 30). Both parties disputed the value of certain household goods and furnishings located in the marital home. (Tr. 32, 73)
Testimony at trial also revealed the existence of several debts and liabilities between the parties. In addition to the $55,000 of mortgage indebtedness, appellant borrowed $15,000 from the credit union around the first of 1997. (Tr. 28) Appellee claimed to have no knowledge of this loan from the credit union and testified that appellant had her name withdrawn from the account. (Tr. 77). There was also an outstanding jointly held loan with a remaining balance of $9,300 on the appellee's 1996 Pontiac Grand Prix. (Tr. 28)
Other debts included credit card indebtedness to Stone Thomas of $550.00; Kaufmanns of $400.00; J.C. Penneys of $300.00; and a Citibank Visa indebtedness of $4,000. (Tr. 7). Appellant testified that he had not made any payments on any of the aforementioned cards. (Tr. 52). Appellant did testify to having made payments on his "own" Visa Advanta card, at which time had a balance of approximately $8,000. (Tr. 7, 53)
The case proceeded to a bench trial on September 15, 1997. By judgment decree dated November 14, 1997, the trial court granted both parties a divorce based on the grounds of incompatibility. (Divorce Decree, p. 2). In order to determine the division of marital property, appellant testified that all assets were marital assets. (Tr. 24-25)
On November 14, 1997, the trial court awarded the following distribution of assets:
 1. Appellee was awarded the real property and was ordered to assume the first mortgage, while appellant was ordered to assume the second mortgage. (Divorce Decree, p. 5, 7).
 2. Appellee was awarded the 1996 Pontiac Grand Prix, and was ordered by the court to assume the loan due on the automobile. (Divorce Decree, p. 6)
 3. Appellee was awarded the household goods and furnishings, while appellant was awarded the tools in his possession. (Divorce Decree, p. 6)
 4. Appellant was awarded the 1989 and 1982 Chevrolet pickup trucks. Appellant also received the 1989 Harley-Davidson motorcycle. (Divorce Decree, p. 6)
 5. Appellant and appellee were each awarded one-half of the appellant's pension. (Divorce Decree, p. 6)
 6. Appellant was awarded the mowing machinery, and other miscellaneous items from the lawn-care business. (Divorce Decree, p. 7)
 7. Each party was ordered to pay one-half of the $4000 Visa bill, while all other debts were to be paid by the party who had incurred said debt. (Divorce Decree, p. 7).
 8. Appellee was awarded spousal support in the sum of $300.00 every month until appellee dies, remarries, or commences living with a member of the opposite sex not a relative. The spousal support is subject to further review by the court, but only after a period of five years. Until that time, it is not subject to modification based upon any change of circumstances. (Divorce Decree, p. 8-9)
Appellant filed a timely notice of appeal on December 8, 1997.
Appellant's first assignment of error states:
 "THE TRIAL COURT ERRED IN FAILING TO MAKE AN EQUAL DIVISION OF MARITAL PROPERTY PURSUANT TO O.R.C. SECTION 3105.171 (C) (1)."
Appellant's second assignment of error states:
 "THE TRIAL COURT ERRED IN FAILING TO MAKE WRITTEN FINDINGS OF FACT THAT SUPPORT THE DETERMINATION THAT THE MARITAL PROPERTY HAS BEEN EQUITABLY DIVIDED AND IN FAILING TO SPECIFY THE DATES IT USED IN DETERMINING THE MEANING OF `DURING THE MARRIAGE,' AS REQUIRED IN O.R.C. SECTION 3105.171 (G)."
Since appellant's first two assignments of error are interrelated, they will be discussed together.
Appellant first argues that the trial court erred since it did not make an equal division of marital property pursuant to R.C.3105.171 (C) (1). Appellant essentially argues that the trial court's distribution was unequal and therefore invalid. Appellant claims that the assets awarded to appellee total $68,108, while the financial indebtedness assigned to appellee equals only $3,750.00, leaving a net asset distribution to appellee of $64,358.39. Appellant notes the total assets distributed to him have a value of $39,408.39, plus the value of the lawn equipment. Appellant was assigned a financial indebtedness, of $37,736, leaving him a net asset distribution of $1,672.39.
Appellant claims that an examination of R.C. 3105.171 indicates that unequal distributions of property will be made only where there is some financial misconduct of a party, or where division of certain marital property would be impractical or burdensome. Appellant claims that the record contains no evidence to support an unequal asset distribution by the trial court.
Appellant also argues that the trial court erred in failing to issue findings of fact that support its determination that marital property had been divided equitably as required by R.C.3105.171 (G). Appellant cites to Allen v. Allen (1996), 109 Ohio App.3d 640, for the proposition that a trial court must provide findings of fact to support its determination that there was an equitable division of marital property. Appellant cites to Cuenotv. Cuenot (Mar. 9, 1998), Stark App. Nos. 1997 CA 00214, 1997 CA 00128, unreported, for further support of this argument.
Appellant further argues that the trial court committed additional error in that it failed to specify the dates it used in determining the meaning of "during the marriage" as required by R.C. 3105.171 (G). Appellant argues that the trial court did not specify the dates it used when dividing marital property.
When reviewing a domestic-relations appeal, this court examines the decision below to see if it was fair, equitable, and in accordance with the law. Kaechele v. Kaechele (1988),35 Ohio St.3d 93, 94; Martin v. Martin (1985), 18 Ohio St.3d 292, 295. In making this determination, however, this court cannot substitute its judgment for that of the trier-of-fact unless the trial court's decision amounts to an abuse of discretion. Kaechele,supra; Martin, supra, at 294-295. Abuse of discretion is more than an error of law or judgment and implies that the court's attitude was unreasonable, arbitrary, or unconscionable.Kaechele, supra; Martin, supra, at 295; Blakemore v. Blakemore
(1983), 5 Ohio St.3d 217, 219.
A trial court exercising domestic relations jurisdiction has full equitable powers appropriate to the determination of all domestic relations matters. R.C. 3105.011. The court must divide the property equitably between the parties, and in the case of marital property, must divide it equally between them, unless equal division would be inequitable under the criteria set out. R.C. 3105.171 (C) (1); Zimmie v. Zimmie (1984), 11 Ohio St.3d 94. See, also, Cherry v. Cherry (1981), 66 Ohio St.2d 348 (The Ohio Supreme Court held, at paragraph one of the syllabus, that "[t]here is no presumption, rebuttable or irrebuttable, that marital property be divided equally upon divorce; rather, a potentially equal division should be the starting point of the trial court's analysis * * *.") However, "[i]n allocating property between the parties to a divorce * * *, the trial court must indicate the basis for its award in sufficient detail to enable a reviewing court to determine that the award is fair, equitable and in accordance with the law." Kaechele, supra,
paragraph two of the syllabus.
In making a division of marital property R.C. 3105.171 (F) provides that the court shall consider all of the following factors:
(1) The duration of the marriage;
 (2) The assets and liabilities of the spouses;
 "(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
 "(4) The liquidity of the property to be distributed;
 "(5) The economic desirability of retaining intact an asset or an interest in an asset;
 "(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
 (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
 (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
 "(9) Any other factor that the court expressly finds to be relevant and equitable."
With regards to appellant's claim that the property division is unequal and therefore inequitable, it is an established principle that equitable need not mean equal. Kaechele, supra, at 95. The trial court is given authority under R.C. 3105.171 to determine an "equitable distribution" if it finds that an equal division would be inequitable. R.C. 3105.171 (C). "A trial court must have discretion to do what is equitable upon the facts and circumstances of each case." Briganti v. Briganti (1984), 9 Ohio St.3d 220,222.
Appellant's comparison of the distribution of the parties' assets and liabilities is inaccurate. Appellant contends that appellee received a financial indebtedness of only $3,750, while appellant was assigned financial indebtedness of $37,736. However appellant failed to note that appellee also received the financial indebtedness of the $44,000 first mortgage as well as the indebtedness of the 1996 Grand Prix. (Tr. 6, 27). In fact, appellee actually received approximately $57,000 of financial indebtedness, while appellant received $38,000 of indebtedness.
Appellant also claimed that the trial court erred by failing to specify the dates it used in determining the meaning of "during the marriage" as required by R.C. 3105.171 (G). Appellant's argument is without merit. Appellant testified at trial that all assets were marital assets for the purpose of determining the division of marital property. (Tr. 24-25) Therefore, the meaning of "during the marriage" was unimportant since appellant stipulated that all assets were marital assets.
Appellant further claims that the trial court erred in failing to make written findings of fact to support the determination that the marital property was equitably divided as required by R.C. 3105.171 (G). Appellant cites Allen, supra, in support wherein the Butler County Court of Appeals reversed the trial court's division of property because the trial court did not issue findings of fact in support of the property distribution.Id. at 641.
Appellant's reliance on Allen is misplaced as Allen is distinguishable from the present case. Unlike the Belmont County Court, the trial court in Allen issued an oral decision. Id. The trial court did not present any written findings to support its division of the parties' property. Id. at 642. The trial court in the present case presented written evidence to support the division of property. The underlying purpose of R.C. 3105.171 (G) is to provide the parties with the assurance that the trial court has considered all necessary and relevant factors. The cases cited by appellant deal with those situations where the trial court has failed to give a written explanation of their division of the property. See Cuenot v. Cuenot (Mar. 9, 1998), Stark App. Nos. 1997 CA 00214, 1997 CA 00128, unreported, 1998 WL 401762 at *3 ("Based upon the trial court's lack of explanation *** we reverse and remand the issue of equitable distribution."). See also Vanderpool v. Vanderpool (1997), 118 Ohio App.3d 876, 880-81
("Because of the lack of evidence in the record supporting a conclusion that the trial court considered the mandatory statutory factors, and because the trial court failed to indicate the factual basis for its award * * * we find the trial court's division of marital property and debt * * * to be an arbitrary abuse of discretion.")
In this case there is sufficient evidence in the record to demonstrate that the trial court addressed all the factors provided for in R.C. 3105.171 (F), and provided a sufficient written explanation to support the determination, that the court made an equitable division of property pursuant to R.C.3105.171 (C).
The trial court recognized its obligation to divide the property in an equitable manner under the guidelines set forth in R.C. 3105.171. (Divorce Decree, p. 5). Also, it is apparent from the divorce decree that the trial court considered the requisite factors of R.C. 3105.171 (F) in determining the property division.
The court considered the duration of the marriage. The court noted that "[e]vidence adduced at the time of trial established that the marriage was of lengthy duration. (Divorce Decree, p. 5). The court addressed the assets and liabilities of each party. (Divorce Decree, p. 5-7). The court addressed the desirability of awarding the family home to the spouse with the custody of the children of the marriage. The court found that it was economically desirable to retain the marital residence intact as an asset. (Divorce Decree, p. 5)
The court addressed the liquidity of the property to be distributed. The court realized that some assets would be tougher to liquidate than others. The court also addressed the economic desirability of retaining the interest of an asset intact. Instead of dividing and liquidating some of the assets, the court realized that it would be better to transfer all of the assets to one of the parties. In order to preserve the interest in the marital home, appellee was given all of the interest in that residence. On the other hand, the court found it economically desirable to transfer all of the interest in the lawn care business to appellant. (Divorce Decree, p. 7). The court chose not to liquidate this asset in the face of the uncertainty as to the value of the mowing machinery and other lawn care equipment. (Tr. 45-46)
The trial court addressed the tax consequences of the property division upon the respective awards to be made to each spouse. In considering the transfer of the real property, the court noted that the property taxes would be the responsibility of appellee. (Divorce Decree, p. 5). The court did not find it necessary to order the sale of any assets to satisfy an equitable distribution of property, nor was there any distribution of property pursuant to a separation agreement.
The court may also choose to examine any other factors that the court believes will lead to an equitable distribution of property. It is clear that the trial court found other factors key in making its distribution of property. One of the factors that the trial court considered is the discrepancy in income. As the court noted, appellant had substantially greater earning abilities than that of appellee. (Divorce Decree, p. 5; Tr. 9) The court felt that appellee had reached her maximum earning potential, being less than half of that of appellant. (Divorce Decree, p. 5)
From the trial court's written explanation, it is apparent that it considered all the requisite factors enumerated in R.C.3105.171 (F) in creating the property distribution. After reviewing the entire record, it cannot be said that the trial court's division of property amounted to an abuse of discretion. It was neither unreasonable, arbitrary, nor unconscionable.
Accordingly, appellant's first and second assignments of error are without merit.
Appellant's third assignment of error states:
 "THE TRIAL COURT ERRED IN FAILING TO PROVIDE FOR TERMINATION OF SUSTENANCE SPOUSAL SUPPORT WITHIN A REASONABLE TIME AND UPON A DATE CERTAIN IN ORDER TO PLACE A DEFINITIVE LIMIT UPON THE PARTIES' RIGHTS AND RESPONSIBILITIES."
Appellant argues that the trial court erred in ordering appellant to provide spousal support for an indefinite period of time. Appellant further argues that the trial court erred in failing to allow modification of the award under any circumstances, prior to a period of five years. Appellant cites to Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, and Ressler v.Ressler (1985), 17 Ohio St.3d 17, for the proposition that decrees of divorce should possess a degree of finality and certainty and that the trial court should place a time-certain limit on sustenance orders. Appellant argues that it was an abuse of discretion by the trial court to not impose a term certain on his spousal support responsibilities.
An award of sustenance alimony should provide for termination of the award within a reasonable time and upon a date certain.Kunkle, supra, at syllabus. Conversely, in cases involving a marriage of long duration, parties of advanced age, or a homemaker-spouse with little opportunity to develop meaningful employment outside of the home, an award of sustenance alimony for life would be proper. Id. at 69. A spousal support award should be equitable. Cherry, supra, at 357. If the award is subject to modification, based upon changed circumstances, an equitable result can be achieved. Id.
The court awarded appellee spousal support as follows:
 "The defendant is awarded as and for spousal support, based upon the twenty-five years of marriage, the sum of $300.00 each and every month. Spousal support shall continue until the defendant dies, remarries, or commences living with a member of the opposite sex who is not a relative. * * * After five years, this spousal support order shall be subject to further order of the Court, but prior to that time, it shall not be subject to modification based upon any change of circumstances." (Divorce Decree, p. 9)
Appellant argues that the trial court should not have ordered spousal support for an indefinite duration. Although the modern trend is to limit alimony to a definite period of time, Kunkle,supra, at 68, "there is no legal mandate requiring trial courts to order the termination of an award of alimony on a date certain." Koepke v. Koepke (1983), 12 Ohio App.3d 80, 81. The factors to be considered in determining whether the trial court should allow an indefinite award of sustenance support or an award terminable on a date certain include: (1) whether the marriage was of long duration, (2) whether the parties are of advanced age, or (3) whether the payee spouse has little opportunity to develop meaningful employment outside the home.Kunkle, supra, at 69.
In this case, the trial court's decision to award spousal support of an indefinite duration was well within the court's discretion. A trial court must have discretion to do what is equitable upon the facts and circumstances of each case. Cherry,supra, at 355. The trial court clearly addressed the factors set forth in Kunkle, and concluded that the facts warranted an indefinite award of spousal support. First, the court found this to be a marriage of lengthy duration. (Divorce Decree, p. 5). The parties had been married twenty-five years, (Tr. 10), and the court found that each party gave the other the best years of their lives. (Divorce Decree, p. 8). Second, the parties are well into middle age. The court concentrated on the final prong of theKunkle analysis. The court noted appellee's limited earning potential. (Divorce Decree, p. 5, 8). The court noted that "[n]o evidence was adduced at trial that [appellee] had not maximized her earning potential or that greater earnings are available to her." (Divorce Decree, p. 5) The court noted that appellant had a job with substantial retirement benefits, and earned more than twice that of appellee. (Divorce Decree, p. 8). Appellee had very few retirement benefits, other than her share of appellant's pension received pursuant to the property settlement, which would not become vested for an additional three to four years. (Tr. 63) In addition to appellee's limited income, appellee received substantial indebtedness pursuant to the property division totaling more than $57,000. Given appellee's limited income and substantial indebtedness, it cannot be said that the trial court abused its discretion, or that the trial judge's decision to order spousal support of an indefinite period was unreasonable, arbitrary, or unconscionable.
Appellant also contends that the trial court abused its discretion by making the spousal support award not subject to modification for a five-year period based upon any change in circumstances. In essence, the trial court reserved jurisdiction over spousal support with a condition precedent, that condition being an elapsed time period of five years.
R.C. 3105.18 (E) and R.C. 3105.18 (E) (1) read together provide that a court "does not have jurisdiction to modify the amount or terms of * * * spousal support unless the court determines that the circumstances of either party have changed" and the decree of divorce "contains a provision specifically authorizing the court to modify the amount or terms of spousal support." "The decision whether to retain jurisdiction to modify a spousal support award is within the trial court's discretion. * * * The trial court is not required to retain jurisdiction over a spousal support award." Ricketts v. Ricketts (1996), 109 Ohio App.3d 746, 755.
In Stackhouse v. Stackhouse (July 25, 1997), Clark App. No. 16244, unreported, 1997 WL 451471 at *4 observed:
 "R.C. 3105.18 (E) has a prophylactic purpose, which is to limit potential modifications to those cases in which the facts and circumstances relevant to one or more of the applicable factors identified in Division (C) (1) of the statute may change during the term of the support order. If the record demonstrates that such a change is reasonably likely to occur, a domestic relations court abuses its discretion by failing to include the modification provision allowed by R.C. 3105.18 (E) in its spousal support order."
Based on the foregoing principles, we find that the trial court's decision making the award of spousal support non-modifiable for a period of five years is neither unreasonable, arbitrary, or unconscionable. There is no evidence in the record to suggest that the circumstances of either party will change within five years from the date of the trial court's decision.
Accordingly, appellant's third assignment of error is without merit.
The judgment of the trial court is hereby affirmed.
 Vukovich, J., concurs Waite, J., concurs
 APPROVED: ____________________ Gene Donofrio Judge