### Connolly v. Connolly
*[Cite as 8 AOA 330]*

*Case No. 57591*
*Cuyahoga County, (8th)*
*Decided November 29, 1990*

*Joyce Barrett, 800 Standard Building, Cleveland, Ohio 44113, for Plaintiff-Appellee.*

*Thomas J. La Fond and John S. Chapman, 1525 National City Bank Building, Cleveland, Ohio 44114, for Defendant-Appellant.*

JOHN V. CORRIGAN, J.

Rosemary Connolly ("appellee") and Kevin Connolly ("appellant") were married in 1968. On December 27, 1985, appellee brought an action for divorce, custody of the couple's four children, alimony and other equitable relief against appellant.

A hearing was commenced before a referee on May 22, 1987. At the conclusion of the hearing, the referee's report and recommendation found, *inter alia,* that:

"1. Appellee be awarded custody of the four children, with appellant receiving liberal visitation;

"2. Appellant pay $306 per week in child support; and

"3. Appellee be awarded a forty percent share on a monthly basis of appellant's total entitlement at retirement in his retirement fund, with appellant receiving a sixty percent share."

The trial court's judgment, which essentially adopted the report and recommendation of the referee, was journalized on June 15, 1988. On June 24, 1988, appellant filed a motion for a new trial pursuant to Civ. R. 59. On October 3, 1988, the trial court denied appellant's motion for new trial. On January 3, 1989, appellant made a motion to set aside the trial court's judgment of October 3, 1988, pursuant to Civ. R. 60(B)(1) and (5). In an affidavit attached to appellant's motion, appellant's attorney at the time of the October 3, 1988 judgment averred, *inter alia,* that:

"1. The trial court promised to notify the litigants when a judgment was rendered;

"2. No notice was ever received from the court concerning the October 3, 1988 judgment;

"3. The trial court failed to make a notation of the judgment in the case's file; and

"4. He did not receive knowledge of the October 3, 1988 judgment until December 22, 1988."

The trial court granted appellant's motion on March 21, 1988 and vacated the October 3, 1988 judgment. On March 23, 1989, the trial court denied appellant's motion for new trial filed by appellant on June 24, 1988. Appellant filed his notice of appeal on April 19, 1989 and subsequently raised the following assignments of error:

"I. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN FAILING TO CONSIDER THE PRESENT VALUE OF APPELLANT'S RETIREMENT BENEFITS.

"II. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN THE MANNER IN WHICH IT DIVIDED APPELLANT'S RETIREMENT BENEFITS.

"III. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN FAILING TO DETERMINE WHETHER OR NOT A DE FACTO TERMINATION OF THE MARRIAGE HAD OCCURRED FOR PURPOSES OF DETERMINING WHAT PORTION OF THE RETIREMENT BENEFITS WILL BE MARITAL PROPERTY.

"IV. THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR BY FAILING TO CONSIDER THE ALLOCATION OF FEDERAL AND STATE DEPENDENCY EXEMPTIONS IN AWARDING CHILD SUPPORT AND DIVIDING MARITAL PROPERTY."

First, we will address appellee's motion to dismiss. Appellee filed a motion to dismiss appellant's assignments of error pursuant to App. R. 4(A), contending that appellant failed to file a notice of appeal within thirty days of the entry of the judgment from which he is

appealing. The issue is from which judgment appellant is appealing.

In addition to requiring that notice of appeal be filed within thirty days of the date of the entry of the judgment which is being appealed, App. R. 4(A) states that this time period is suspended when any party files a motion for new trial.

Appellant's motion for new trial under Civ. R. 59 filed on June 24, 1988 suspended the running of the time limit for filing a notice of appeal from the trial court's June 15, 1988 judgment. The time limit for filing a notice of appeal began to run again, however, when the trial court dismissed appellant's motion for a new trial on October 3, 1988.

In *Steadley v. Montanya* (1981), 67 Ohio St. 2d 297, the Ohio Supreme Court stated:

"Civ. R. 60(B) may not be used as a substitute for a timely appeal or to accommodate a party by extending the normal period for appeal. *Bosco v. Euclid* (1974), 38 Ohio App. 2d 40; *McCue v. Insurance Co.* (1979), 61 Ohio App. 2d 101. However, a judgment may be vacated for a valid reason demonstrated on the record that falls within the guidelines of Civ. R. 60(B), even if the effect is to extend appeal time." *Id.* at 299.

When a court has indicated that notice of a judgment will be given to a movant, the failure of a court to give the movant such notice is a sufficient basis for granting a Civ. R. 60(B) motion. *Steadley v. Montanya* (1981), 67 Ohio St. 2d 297; *Bancroft v. Communications, Inc.* (1986), 34 Ohio App. 3d 165.

In the instant case, valid grounds for granting a Civ. R. 60(B) motion were presented then the appellant averred that the trial court failed to notify him of its October 3, 1988 judgment after it had promised to do so and that appellant did not become aware of the judgment until December 22, 1988. The granting of appellant's motion to set aside the judgment under Civ. R. 60(B), therefore, relieved appellant from having to file a notice of appeal within thirty days of October 3, 1988. The time for filing a notice of appeal finally began to run again when the trial court dismissed appellant's motion for new trial on March 23, 1989. Appellant's notice of appeal was filed on April 19, 1989, well within the thirty day time limit.

The appellee's motion to dismiss appellant's assignments of error is dismissed.

## I.

For his first assignment of error, appellant contends that the trial court erred when it failed to affix a present value to his retirement benefits.

The Ohio Supreme Court recently addressed the issue of dividing retirement benefits in divorce cases in *Hoyt v. Hoyt* (1990), 53 Ohio St. 3d 177. The *Hoyt* court set forth guidelines for the division of retirement benefits by holding that the trial court must make a fair and equitable distribution by "*** [applying] its discretion based upon the circumstances of the case, the status of the parties, the nature, terms and conditions of the pension or retirement plan, and the reasonableness of the result ***," *id.* at 179, while striving to achieve two important goals. First, preservation of "the pension or retirement asset in order that each party can procure the most benefit" and second, disentanglement of "the parties' economic partnership so as to create a conclusion and finality to their marriage." *Id.*

The *Hoyt* court then explained how these guidelines are to be applied. First, the court noted that the trial court has discretion in this area, stating that "any given pension or retirement fund is not necessarily subject to direct division but is subject to evaluation and consideration in making an equitable distribution of both parties' marital assets." *Id.* at 180. Further, the court said, "in some instances, the parties' pension and retirement funds may bed the most significant marital asset of one or both spouses. Thus, the trial court must understand the intricacies and terms of any given plan, and, if necessary, require both parties to submit evidence on the matter in order to make an informed decision." *Id.* at 181.

Second, *Hoyt* addressed the goal of preserving the retirement benefit. The court noted that:

"There are several alternatives to a direct REA division, such as an immediate offset or a current assignment of proportionate shares, with either a current distribution or a deferred distribution. A deferred distribution may consist of either a current assignment or a division of the asset at such time that the plan directs distribution based upon the employee's eligibility." *Id.* at 181.[1]

The court then addressed at some length the various advantages and disadvantages of

the present value approach and the proportionate share approach.

Finally, the *Hoyt* court addressed the goal of disentangling the parties economic partnership. The court acknowledged that this might be the most difficult goal to achieve. The court, however, recommended that, when possible, the trial court should attempt to achieve finality. *Id.* at 182. In doing so, the court noted that while some situations may lend themselves to joint ownership and joint decisionmaking after divorce, because of the nature of divorce "*** the circumstances usually are not conducive to joint decision-making by the parties, *** [therefore] some effort should be made to disentangle the parties' economic affairs." *Id.* at 183. *Hoyt* concluded that:

"*** where circumstances permit, the trial court should attempt to ascertain the optimum value the pension or retirement benefit has to the parties as a couple, based upon the nature and terms of the plan. The trial court should structure a division which will best preserve the fund and procure the most benefit to each party." *Id.*

In *Hoyt,* after applying the guidelines it outlined, the court found the present value approach inequitable and applied the proportionate share approach as the trial court did in the instant case. However, the gist of appellant's argument in the first assignment is not so much that the trial court erred in opting for the proportionality approach, but rather that the trial court arbitrarily concluded that there was no need to determine the present value of the parties' interest. Both sides presented expert testimony, but the referee concluded there was no need to determine the present value and dismissed the experts' conclusions as irrelevant.

When faced with a situation where the trial court failed to value all of the marital property and the interests of the parties, reviewing courts have found reversible error. In *Eisler v. Eisler* (1985), 24 Ohio App. 3d 151, the court held "*** the trial court's failure to find value was error because it is impossible to review the propriety of the trial court's decision ***." *Id.* at 152. In *Willis v. Willis* (1984), 19 Ohio App. 3d 45, the court stated "*** the unvalued pension fund [prevents] *** this court from reviewing the overall division of property." *Id.* at 48. The *Willis*

court went on to state "[t]he trial court is not privileged to omit valuation altogether." *Id.*

Appellee attempts to distinguish *Willis* from the instant case by pointing out that in *Willis* no evidence was put forth to value the pension plan. While in the instant case both sides presented evidence as to the present value of appellant's retirement fund. This factual difference, however, is not sufficient to distinguish the *Willis* decision. In both cases the end result was the same; the trial court failed to affix a present value to the marital property.

More recently, in *Mochko v. Mochko* (Cuyahoga, 1990), unreported No. 57219, in reversing the trial court, this court came to a similar conclusion. in *Mochko,* we stated:

"*** the trial court erred by not placing a value on Mr. Mochko's pension benefits based on probable eligible dates of commencement for such benefits. *** As there is a lack of any evidence establishing the value placed on these pension benefits, we are hampered in our efforts to review the propriety of the court's division of that property." *Id.* at 14.

As a result of the trial court's failure to affix a present value to appellant's retirement benefits, this court is unable to fully review the trial court's decision.

Appellant's first assignment of error is not well taken.

## II.

For his second assignment of error appellant contends that the trial court erred in the manner in which it divided appellant's retirement benefits.

In *Hoyt,* as noted above, the court explained that the portion of retirement benefits which is marital property should be determined by "*** computing the ratio of the number of years of employment of the employed spouse during the marriage to the total years of his or her employment." *Id.* at 182.

In the instant case, appellant was employed during the entire thirteen years of the marriage.[2] Appellant will be eligible to receive his retirement benefits after working for thirty years. Applying the formula set forth in *Hoyt,* the portion of appellant's overall retirement benefits which is a marital asset is approximately forty percent.

· In the instant case, the trial court's awarding appellee forty percent of appellant's overall retirement benefits resulted in her

receiving one hundred percent of the portion of the retirement benefits which is a marital asset. The trial court appears to have been unaware of this result. From the referee's report and recommendation, it appears that the referee was actually attempting to achieve an equal division:

"Neither valuation approach takes account of the basic expectancy of the parties during their marriage: there would be for each of them at retirement a monthly sum available to meet the expenses each will then have. No valuation method satisfies this expectation. The same can be assured only with the preparation of a Qualified Domestic Relations Order (QDRO) in which Plaintiff is awarded a share of Defendant's total entitlement at retirement, along with her right to survivorship benefits prior to receipt of said share. In the normal course of employment Defendant will evidently be first entitled to retirement benefits at age 60 (see Joint Exhibits I and I-A) at which time he will have worked within the Civil Service Retirement System for some thirty (30) years; of which about thirteen (13) were during the marriage. Plaintiff should be awarded 40% of his total benefit which is to be payable each month, when it becomes payable to him, with Defendant awarded 60% thereof." (Referee's Report and recommendations, page 15).

Because the trial court failed to comprehend the consequences of its division of the portion of appellant's retirement benefits which is a marital asset, it failed to achieve a fair and equitable distribution.

Appellant's second assignment of error is well taken.

### III.

For his third assignment of error, appellant contends the trial court erred in failing to determine whether a *de facto* termination of the marriage had occurred for purposes of determining what portion of the retirement benefits are marital property.

The referee found that a final separation occurred in March 1985.[3] The referee stated, however, that the date of termination was not significant when calculating the division of appellant's retirement benefits and used the date of the trial, 1987, for the calculation.

In *Day v. Day* (1988), 40 Ohio App. 3d 155, the court stated that:

"*** in determining a date for division and valuation of property, the trial court should commence with the date the marriage is judicially terminated and make adjustments there from either as to property to be included or as to the value of included property, as equitable considerations may require." *Id.* at 158. *Day* went on to note that there may be a *de facto* termination prior to the marriage being judicially terminated, but emphasized that "*** such a *de facto* termination must be clear and bilateral, not unilateral ***." *Id.* at 158.

In the instant case, the trial court, believing that the date of separation was not significant, failed to address this issue. Under the trial court's method of dividing appellant's retirement benefits, however, the date of calculation significantly affects the percentage of the benefits that appellee would be awarded by adding two years to the time that the retirement benefits are considered marital property.

Appellant's third assignment of error is well taken.

### IV.

For his fourth assignment of error, appellant contends the trial court failed to consider the allocation of federal and state dependency exemptions in awarding child support.

In *Hughes v. Hughes* (1988), 35 Ohio St. 3d 165, the Ohio Supreme Court held that a court may award the dependency exemption permitted in Section 151, Title 26, U.S. Code, to a non-custodial parent. *Id.*, at the syllabus. *Hughes,* however, does not require a court to do so. Regarding the present value approach, the court stated:

"The disadvantages of determining a present case value are in projecting, deducing and calculating what a future benefit is worth in terms of today's dollar. This alternative may only be viable when the parties have substantial other marital assets to offset the nonemployed spouse's share. The advantage of determining a present cash value is that it disentangles the affairs of the parties and concludes their economic partnership. Once the trial court has determined a value, a sum certain, the fund may be liquidated or the employed spouse could be required to make periodic payments to the non-employed spouse in an amount equivalent to that person's share. Another alternative would be to offset the non-employed spouse's proportionate share with some other marital asset." *Id.* at 182.

On June 24, 1989, appellant filed a motion for new trial. One of the issues he raised in his motion was the allocation of federal and state dependency exemptions. In the trial court's journal entry of October 3, 1989, which was later vacated, the trial court, in discussing its decision not to allocate dependency exemptions to appellant, stated that it "declined to use its permissive power [to award dependency exemptions to appellant]." On March 21, 1989, appellant's motion for new trial was again denied.

Appellant argues *Ham v. Ham* (Clinton, 1987), unreported No. CA87-02-006, supports his argument. *Ham,* however, is distinguishable from the present case. In *Ham,* the trial court held that it had no jurisdiction to award dependency exemptions. In the instant case, the trial court merely decided not to award dependency exemptions to the non-custodial parent.

Appellant's fourth assignment of error Is not well taken.

The trial court's judgment is affirmed in part and reversed in part and remanded for proceedings consistent with this opinion.

PATTON, C.J., concurs.

KRUPANSKY, J., dissents.

---

[1] See also *Frieden v. Frieden* (Cuyahoga 1990), unreported No. 57032, where this court stated:

"A review of the case law of the state of Ohio and our sister state jurisdictions reveals that four methods of distribution have been developed in order to divide the marital asset of a pension. These four methods of distribution involve:

"1) withdrawing the employee's interest from the fund;

"2) offsetting the present value of the nonemployee spouse's share with other marital property;

"3) offsetting the present value of the nonemployee's share with installment payments; or

"4) ordering that a percentage of the future benefits be paid directly from the fund to the nonemployee spouse, if and when the pension matures. *Baldwin's Ohio Domestic Relations Law,* 1 Volume (Cleveland Banks-Baldwin), Text 15.05(E) (3), 1987."

[2] Appellant contests this figure in his third assignment of error.

[3] It should be noted that the appellant incorrectly uses the date March 1984 in his brief.