OPINION
On November 25, 1983, appellant, Wallace Duff, and appellee, Shirley Duff, were married. During the marriage, appellant was employed by the United Parcel Service and earned a retirement plan. Appellant had been employed by the United Parcel Service since August 1, 1968. On June 13, 1995, appellee filed a complaint for divorce. A hearing before a magistrate was held on April 15, 1996. By decision filed May 2, 1996, the magistrate recommended in pertinent part that the parties shall share equally appellant's pension earned from the date of marriage to the date of the decision. The magistrate ordered that a Qualified Domestic Relations Order (hereinafter "QDRO") be prepared. The trial court approved and adopted this decision. On May 9, 1996, appellant filed an objection to the magistrate's decision requesting clarification of the figures to be used for the QDRO. By entry filed May 10, 1996, the trial court remanded the issue to the magistrate for clarification. By decision filed May 13, 1996, the magistrate clarified that appellee was entitled to half of appellant's pension earned between the stated dates and said share shall be allowed to mature in the same manner as the retirement benefits mature as a whole. The QDRO was subsequently filed on August 29, 1996. On September 24, 1996, appellant filed an objection to the magistrate's "methodology" used in calculating appellee's share of the pension. On October 15, 1996, appellant filed an objection to the QDRO claiming it was not equitable or fair because the magistrate had adopted one of two appraisals of the pension that afforded a greater benefit to appellee. A hearing was held on November 25, 1996. By entry filed December 3, 1996, the trial court denied appellant's objections. On September 8, 1999, appellant filed a motion to correct the QDRO claiming it should reflect the amount appellant would have received had he retired at the time of the divorce (up to $2,000 per month) versus the amount at retirement ($3,000 per month). A hearing before a magistrate was held on November 8, 1999. By decision filed November 12, 1999, the magistrate recommended that appellant's motion be denied. By judgment entry filed November 12, 1999, the trial court approved and adopted the magistrate's decision. On November 19, 1999, appellant filed an objection to the magistrate's decision. By entry filed December 8, 1999, the trial court denied the objection. Appellant filed an appeal and this matter is now before this court for consideration. Assignments of error are as follows:
 I THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN DENYING THE MOTION OF THE DEFENDANT TO CORRECT THE QUALIFIED DOMESTIC RELATIONS ORDER.
 II THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION IN MODIFYING A PROPERTY SETTLEMENT AWARD TO THE PLAINTIFF-APPELLEE IN VIOLATION OF OHIO REVISED CODE SECTION 3105.171(I).
 I, II
Appellant claims the trial court erred in denying his motion to correct the QDRO and erred in modifying the property settlement. We disagree. The gravamen of these assignments of error is whether the fraction of the months of coverture over the months of employment should be multiplied by the monthly pension sum that would have been available at the time of the divorce or the monthly pension sum available at retirement. The property settlement on the issue is silent as to what that multiple should be: * * * The Defendant has been employed by United Parcel Service since August 1, 1968. He married the Plaintiff on November 25, 1983. The portion of the pension earned during the period of time from the date of the marriage to the date of this Entry is marital property. The Plaintiff is entitled to share in the retirement benefits earned during that period on an equal basis with the Defendant. Plaintiff is entitled to receive her share of the above benefit by monthly payments beginning on the date Defendant retires whether it be a normal retirement or early retirement. * * *
See, Magistrate's Decision filed May 2, 1996 at Finding of Fact No. 10.
Appellant argues that the language "earned during that period" limits the multiple to the monthly pension sum actually known at the time of the divorce decree (up to $2,000). Appellant argues to interpret the language any differently would violate R.C. 3105.171(I) which states "[a] division or disbursement of property or a distributive award made under this section is not subject to future modification by the court." We disagree with appellant's argument. As cited by appellant in his brief at 5, the courts of Ohio have recognized various ways that a pension fund can be divided: Ohio courts have recognized several alternative methods for equitably dividing pension funds within the context of the overall property division. The four alternatives include (1) withdrawing the employee spouse's share of the funds from the pension plan and apportioning and distributing them at the time of the divorce; (2) determining the present value of the pension fund, calculating the nonemployee spouse's proportionate share, and offsetting that amount with other marital assets or a lump sum payment; (3) determining the present value of the pension fund, calculating the nonemployee spouse's proportionate share, and offsetting that amount with installment payments from the employee spouse; and (4) determining the appropriate percentage or amount of future benefits in view of the circumstances and ordering that amount to be paid directly from the fund to the nonemployee spouse if and when the pension matures. See, e.g., Smith v. Smith (1993),91 Ohio App.3d 248, 253, 632 N.E.2d 555, 558-559; Sprankle v. Sprankle (1993), 87 Ohio App.3d 129, 132, 621 N.E.2d 1310, 1311-1312; Connolly v. Connolly (1990), 70 Ohio App.3d 738, 743, 591 N.E.2d 1362, 1365, fn. 1; Powell v. Powell (1989), 49 Ohio App.3d 56, 58, 550 N.E.2d 538, 540-541; Day v. Day (1988), 40 Ohio App.3d 155, 159, 532 N.E.2d 201, 205-206. (Emphasis added.)
Ricketts v. Ricketts (1996), 109 Ohio App.3d 746, 752.
The trial court sub judice chose alternative number four, "determining the appropriate percentage * * * and ordering that amount to be paid directly from the fund" to appellee when the pension matures. The maturity of the pension and the monthly pension multiple can only be determined at retirement otherwise, issues such as inflation of the value of the dollar and subsequent increases or decreases would not be accounted for in the distribution. The trial court left the amount of the distribution to the maturity of the pension by specifically stating "Plaintiff is entitled to receive her share of the above benefit by monthly payments beginning on the date the Defendant retires whether it be a normal retirement or an early retirement." See, Magistrate's Decision filed May 2, 1996 at Finding of Fact No. 10. The triggering event for the amount of distribution is the retirement of appellant after thirty years of employment, of which one hundred forty-nine months occurred during the marriage. Upon review, we find the QDRO was not subject to further amendment and the trial court did not violate R.C.3105.171(I) in refusing to adjust the multiple per appellant's request. Assignments of Error I and II are denied.
The judgment of the Court of Common Pleas of Guernsey County, Ohio is hereby affirmed.