OPINION
This is an accelerated calendar appeal submitted on the briefs of the parties from the judgment entry issued by the Portage County Court of Common Pleas, Domestic Relations Division, granting appellant, Viola E. Boyles, and appellee, Stephen R. Boyles, a divorce.
Appellant and appellee were married on August 24, 1985. The parties had two children born as issue of their marriage. After almost fourteen years of marriage, appellant filed a complaint for divorce on June 29, 1998.
This matter came on for a hearing before the trial court on June 24 and 25, 1999. After taking the matter under consideration, the trial court issued a judgment entry on October 12, 1999. In relevant part, the trial court found as follows: (1) appellee was ordered to pay spousal support in the sum of $900 a month for forty-eight months; (2) while there were several different values provided for the Wilbur Realty Company ("the corporation"), a marital asset, the trial court adopted the capitalized assert earning value, which was $266,000; (3) the Brookdale, Summers, and Garrett properties were the separate property of appellee; and (4) appellant was awarded $412,736 or 49.3 percent of the marital assets while appellee was awarded $424,437 or 50.7 percent, a difference of $11,701. To equalize the asset distribution, the court ordered appellee to pay appellant the sum of $5,850.50, bringing appellant's total marital asset award to $418,586.50, or 50 percent.
In response to the trial court's determination, appellee filed a motion for a new trial on October 22, 1999, arguing that the trial court failed to deduct certain debts which would reduce the total equity value of the corporation.
Likewise, on November 22, 1999, appellant filed her own motion for new trial, in conjunction with a response to appellee's motion for a new trial. In her motion, appellant argued, inter alia, that the trial court did not identify and divide all of the insurance policies owned by appellee. In addition, appellant challenged the trial court's characterization of the Brookdale, Summers, and Garrett properties as constituting appellee's separate property.
Due to the filing of these motions, the trial court revisited this case on November 22, 1999, by conducting a brief hearing on the matter. On June 26, 2000, the trial court ruled on these motions through a judgment entry and modified the divorce decree.
Specifically, the trial court acknowledged that it had erred in the calculation of the marital assets, and that the tax refund amount should have been $6,456, not $9,456. Pursuant to this new calculation, appellant was awarded $409,736 or 49.1 percent of the marital assets, while appellee was awarded $424,437, or 50.9 percent, a difference of $14,701. Again, to equalize the property division, the trial court ordered appellee to pay appellant the sum of $7,350.50, bringing her total marital asset award to $417,086.50, or 50 percent.
Although not raised by either party, there is a potential jurisdictional problem with respect to appellant's motion for a new trial. Civ.R. 59(B) provides that "[a] motion for a new trial shall be served not later than fourteen days after the entry of the judgment." As mentioned above, the decree of divorce was issued on October 12, 1999, while appellant's motion for a new trial was filed on November 22, 1999, well beyond the fourteen-day limit.[1] Thus, the trial court was without authority to consider appellant's untimely filed motion for new trial. Horner v. Toledo Hosp. (1993), 94 Ohio App.3d 282, 290; Snow at 5. Consequently, we will not consider this motion or its contents on appeal.
Despite this jurisdictional defect, this court still has jurisdiction to entertain appellant's appeal. App.R. 4(A) provides that the thirty days time period to file a notice of appeal is tolled when any party files a motion for a new trial. See, also, Connolly v. Connolly (1990),70 Ohio App.3d 738. Ergo, appellee's timely motion for a new trial filed on October 22, 1999, suspended the time limit for filing a notice of appeal from the trial court's judgment and divorce decree. The time limit for filing a notice of appeal began to run immediately after the trial court ruled on appellee's motion for a new trial, which was May 26, 2000. Subsequently, appellant timely filed her notice of appeal on June 26, 2000.
Having resolved our jurisdictional concerns, we return to the merits of this appeal wherein appellant presents five assignments of error for our review:
 "[1.] The trial court erred in determining the value of Wilbur Realty, Inc.[,] as the evidence before the court does not provide an adequate evidential predicate to support the court's finding.
 "[2.] The trial court erred in overruling plaintiff-appellant's post trial motion to divide marital assets which were not divided following trial.
 "[3.] The trial court's decision finding three (3) properties owned jointly by the parities and used by the parties as collateral for mortgages owed jointly by the parties, were pre-marital assets, constitutes an abuse of discretion.
 "[4.] The trial court's award of spousal support was arbitrary, capricious and an abuse of discretion.
 "[5.] The trial court's judgment entry is silent as to whether or not the court considered any of the nine (9) statutory factors relevant to a determination whether to make a distributive award to plaintiff-appellant of defendant-appellee's property determined to be pre-marital or separate property of defendant pursuant to R.C. 3105.171(C)(4)(F)."
 Under the first assignment of error, appellant contends that the trial court erred in assessing the value of the corporation at $266,000 as the evidence presented to the court did not support this value. Appellant further claims that the trial court failed to explain how it arrived at this figure.
We review a trial court's determination of the value of marital property for an abuse of discretion. Holcomb v. Holcomb (1989),44 Ohio St.3d 128, 131; Berish v. Berish (1982), 69 Ohio St.2d 318, 319;James v. James (1995), 101 Ohio App.3d 668, 681; Cottage v. Cottage (June 13, 1997), Trumbull App. No. 96-T-5412, unreported, 1997 WL 360977, at 3. An abuse of discretion connotes more than an error in judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219.
In this cause, the October 12, 1999 judgment entry indicates that the trial court adequately explained how it assigned the value of the corporation:
 "The Court further finds that of the several differing values for the Wilbur Realty Company, the most appropriate value and the one adopted by the Court is the Capitalized Asset Earnings (see Page 12 of the Greenwald Valuation Report) value, which is $266,000."
 Thus, by referring to and relying on the report prepared and submitted by appellant's expert, Robert M. Greenwald ("Mr. Greenwald"), which calculated the fair market value of the corporation, the trial court reached its determination as to the value of this marital asset.
The record shows further that appellant's own expert contradicts her claim that the trial court erred when it determined the fair market value of the corporation to be $266,000. Mr. Greenwald, who is a certified public accountant ("CPA"), testified that he employed a number of methods to determine the value of the corporation, to-wit: the net asset value, the capitalized excess earnings, the discounted future earnings, and the rules of thumb and market data formula. According to Mr. Greenwald, he gave "the most weight to the discounted future earnings" methodology when assessing the value of the corporation. This approach "assesses the likely future earnings of the [corporation] and derives value based on the net present value of the future earnings stream and residual value." Under the discounted future earnings approach, the value of the corporation was $450,000.
The second most reliable formula, according to appellant, was the capitalized excess earnings calculation, which projected the value of the corporation to be $266,000. This method "considers the value of the [corporation's] historical earnings. * * * Value is based upon the presumed ability of the [corporation] to generate earnings and a reasonable return on investment consistent with adjusted historical performance." According to Mr. Greenwald's report, the corporation's earnings "were adjusted to reflect industry average compensation for the [corporation's] officers and other normalization adjustments."
In addition, Mr. Greenwald indicated that the capitalized excess earnings formula was "a relatively good method in terms of analyzing the value a buyer would be perceiving, assuming that history will, in some respects, repeat itself, and that is the strength and weakness of the method."
Mr. Greenwald also employed two remaining valuation methods to determine the fair market value of the corporation, to-wit: the net asset value and the rules of thumb and market data formulas. The net asset value of the corporation was $155,132. Pursuant to this methodology, the intangible value of the corporation was not considered. However, "it does reflect the minimum value of the [corporation's] assets."
Finally, under the rules of thumb and market data approach, the range of values for the corporation was $50,000 to $1,200,000. According to Mr. Greenwald's report, this method is "used as a guideline for an indication of the range of value of the [corporation]. The market data is composed of numerous actual sales of small, closely held [corporations]. * * * The range of value indicated by the rules of thumb include the 1998 business reference guide ($600,000 — $1,000,000), the Business Valuations by Industry ($50,000 — $700,000), and the Bizcomps and IBA data ($1,100,000 — $1,200,000)."
At the close of his testimony, Mr. Greenwald opined that pursuant to the discounted future earnings approach, the relative value of the corporation was $450,000. In contrast, appellee's expert, Richard J. Tinker ("Mr. Tinker"), who was also a CPA, indicated that the corporation was valued at $150,000.[2]
Contrary to appellant's assertion, the record indicates that the trial court did, indeed, "have before it sufficient evidence to justify or support the dollar figure it obtain[ed]." Polakoff v. Polakoff (Aug. 4, 2000), Trumbull App. No. 98-T-0163, unreported, 2000 WL 1121799, at 4, citing Rodriguez v. Rodriguez (Apr. 13, 1990), Geauga App. No. 89-G-1498, unreported, 1990 WL 47458, at 2. The price selected by the trial court was based upon the testimony and report submitted by appellant's expert. "When expert testimony is admitted into evidence regarding property valuation, the trial court may believe all of what the witness says, none of it or part of it." Baker v. Baker (Apr. 7, 1997), Butler App. No. CA96-10-216, unreported, 1997 WL 162388, at 1. In this case, the trial court chose to believe Mr. Greenwald and his capitalized excess earnings methodology, which valued the corporation at $266,000. Accordingly, a trial court does not abuse its discretion in determining the value of a marital asset when it employs the values provided by the parties. Helms v. Helms (Apr. 1, 1998), Wayne App. No. 97CA0008, unreported, 1998 WL 150361, at 3.
"Our task on appeal is not to require the adoption of any particular method of valuation, but to determine whether, based on all the relevant facts and circumstances, the court abused its discretion in arriving at a value." James, 101 Ohio App.3d, at 681. Since there is sufficient evidence to support the trial court's finding of $266,000 as being the value of the corporation, no abuse of discretion occurred in this regard. Appellant's first assignment of error is, therefore, not well-taken.
The second assignment of error alleges that the trial court's decision failed to identify and divide all of the insurance policies owned by appellee. To support her position, appellant points to appellee's interrogatories where he indicated that he owned two Cigna life insurance policies with a cash value of $33,276 and $11,500.[3] It is these policies that appellant maintains were not considered by the trial court.
Appellant, however, failed to raise or address this particular claim with the court below during the trial. At no point during the trial did appellant make any reference to these two Cigna life insurance policies at issue. We acknowledge that appellant did, in fact, raise this issue in her motion for a new trial. However, as explained earlier in this opinion, the trial court was without authority to consider appellant's untimely motion. Consequently, appellant never raised the issue concerning the Cigna life insurance policies with the trial court even though she was aware of the existence of these policies through appellee's response to her interrogatories prior to trial. Therefore, we will not consider this matter on appeal. See, e.g., O'Brikis v.O'Brikis (Oct. 6, 2000), Portage App. No. 99-P-0045, unreported, 2000 Ohio App. LEXIS 4663, at 11 (holding that since appellant failed to raise the issue of passive appreciation with the trial court, he waived the right to claim any error on appeal). Accordingly, appellant's second assignment of error is meritless.
In the third assignment of error, appellant challenges the trial court's classification of certain property. Appellant specifically takes issue with the trial court's finding that the Summers, Brookdale, and Garrett properties were premarital and thus the separate property of appellee.[4] Appellant seems to posit that she acquired title to these properties during the marriage when the parties jointly encumbered these properties by way of mortgage; thus, according to appellant, these properties were marital in nature.
The determination of whether property is either marital or separate involves a factual inquiry. Frederick v. Fredrick (Mar. 31, 2000), Portage App. No. 98-P-0071, unreported, 2000 WL 522170, at 5. Generally speaking, marital property includes either real and personal property or an interest in such property owned by one or both of the spouses and was "acquired by either or both of the spouses during the marriage." R.C.3105.171(A)(3)(a)(i) and (ii). Further, "[p]roperty acquired during the marriage is presumed to be marital unless it can be shown to be separate." Frederick at 6.
In contrast, separate property is excluded from the definition of marital property. R.C. 3105.171(A)(3)(b). Again, in general, separate property consists of all real and personal property that was acquired by one spouse prior to the marriage. R.C. 3105.171(A)(6)(a)(i-vii). However, "the holding of title to property by one spouse individually or by both spouses in a form of co-ownership does not determine whether the property is marital property or separate property." (Emphasis added.) R.C. 3105.171(H). The party seeking to establish the separate property has the burden of proof only by a preponderance of the evidence. Peck v.Peck (1994), 96 Ohio App.3d 731, 734.
In reviewing the evidence, we determine that appellee, as the party seeking to establish that the Brookdale, Summers, and Garrett properties were his separate properties, failed to satisfy his burden of proof. To explain how we arrived at this conclusion, we will consider each property in turn.
First, we examine the circumstances surrounding the acquisition of the Brookdale property. In 1983, appellee obtained the Brookdale property by way of deed. At trial, appellee introduced into evidence a copy of deed for the Brookdale property, which named him as the sole grantee.[5]
Appellee further indicated that there was a blanket loan that encumbered the Brookdale property, and that he, together with appellant, signed this loan.
Insofar as the Summers property is concerned, appellee testified that he initially purchased this property in 1980; but, in 1983, he transferred this property to his father, Ralph D. Boyles.[6] Then, in 1987, appellee's father transferred the Summers property back to appellee by way of warranty deed.[7] Subsequently, the instant parties, in 1993, jointly obtained a mortgage which was secured by this property.[8]
Likewise, the Garrett property was acquired by appellee prior to the marriage through a land contract which was entered into in April 1983.[9]
However, in 1986, the parties jointly completed a loan application seeking to refinance the Garrett property.[10]
In Nuding v. Nuding (Dec. 7, 1998), Mercer App. No. 10-97-13, unreported, 1998 WL 856923, the Third Appellate District was faced with a similar factual scenario. There, the husband purchased 2.32 acres of land prior to the marriage. However, during the marriage, the husband used this separate property as security for repayment of a marital debt. As a result, the Nuding court determined since the money borrowed was not used to purchase the residence, the property remained the separate property of the husband:
 "While R.C. 3105.171(A)(3)(a)(i) and (ii) provide that marital property can consist of either real property or an interest in real property owned by one or both spouses which was `acquired by either or both of the spouses during the marriage,' the property in this case (the 2.32 acres) was not in any way `acquired' during the parties' marriage. [The husband] merely posted this separate property as security for the repayment of a marital debt. The monies borrowed went to purchase other goods or services. It is these goods which became marital assets as payments on the debt were made using marital funds. The debt and repayment process had no transmutative effect on the separate property posted by [the husband] as security. Had the mortgage been taken to finance the purchase of the 2.32 acres and this property was paid for using marital monies, the property would clearly qualify as a marital asset `acquired by either or both spouses during the marriage.' See R.C. 3105.171(A)(3)(a)(i) and (ii). This would be true even if the mortgage was originally the separate debt of one party prior to a marriage, to the extent that the marital monies contributed to the repayment of the debt. * * * Thus, since the money in this case was in no part used to purchase the residence, the house remains the separate property of [the husband]. We find that the trial court abused its discretion [in finding] that the property was converted into marital assets merely upon signing mortgages and assuming liability of the debt." (Citation omitted and emphasis added.) Nuding at 3.
 Thus, pursuant to Nuding, the fact that the parties subsequently mortgaged separate property does not alter the separate character of the property when the mortgage was not taken in order to finance the purchase of the separate property. Id. at 3. Compare Bertoldi v. Bertoldi (Oct. 8, 1997), Summit App. No. 18346, unreported, 1997 WL 665714, at 4-5 (holding that it was not error for the trial court to classify the remainder of equity in the marital home as marital property when the husband, who acquired the home before the marriage, granted the wife an interest in the home for their joint life and the mortgage was in their joint names) with Rapose v. Rapose (Mar. 24, 1995), Ashtabula App. No. 93-A-1768, unreported, 1995 WL 236826, at 3-4 (holding that where the husband previously contributed to the repayment of a mortgage for property that was originally the separate property of the wife, these actions are sufficient to change the interest and appreciation on the property to marital property).[11]
Likewise, in the instant matter, the Brookdale and Garrett properties were acquired by appellee prior to the marriage while the Summers property was obtained during the marriage. Although these properties were all encumbered by mortgages in the joint names of the parties, there is a paucity of detail as to how the borrowed money was spent or if non-marital funds were used to make the mortgage payments.
Stated another way, appellee, as the party bearing the burden of proof, provided no evidence that the mortgages which encumbered the Brookdale, Summers, and Garrett properties were not directly used to finance those properties.[12] Further, appellee provided no evidence that the mortgage payments were made with his separate non-marital funds. Neither was there any evidence as to a portion of the value of each property which should be considered non-marital. Consequently, appellee did not prove, by a preponderance of the evidence, that the Brookdale, Summers, and Garrett properties were his separate properties. Accordingly, the characterization of these properties as entirely being the separate property of appellee was error. Appellant's third assignment of error is, therefore, meritorious.
In the fourth assignment of error, appellant challenges the trial court's order of spousal support in the amount of $900 for a duration of forty-eight months, alleging that this order of support is inadequate.
A trial court enjoys broad discretion in awarding spousal support to either party when it is "appropriate and reasonable" to do so. R.C.3105.18(C)(1); Thompson v. Thompson (Aug. 10, 2001), Portage App. No. 2000-P-0110, unreported, 2001 Ohio App. LEXIS 3540, at 4. It follows that such an award will not be disturbed on appeal absent an abuse of discretion. Kunkle v. Kunkle (1990), 51 Ohio St.3d 64, 67.
To determine whether spousal support is appropriate and reasonable, the trial court is required, under R.C. 3105.18(C)(1), to consider all of the following factors:
 "(1) the income of the parties; (2) the earning abilities of the parties; (3) the ages and health of the parties; (4) the parties' retirement benefits; (5) the duration of the marriage; (6) the appropriateness of the parties to seek employment outside the home; (7) the marital standard of living; (8) the education of the parties; (9) the assets and liabilities of the parties; (10) the contribution of either party to the other's education; (11) the cost of education of the party seeking support; (12) the tax consequences of a spousal support award; (13) the lost income that results from the parties marital responsibilities; and (14) any other factor the court deems relevant." Davis v. Davis (Mar. 31, 2000), Portage App. No. 98-P-0122, unreported, 2000 WL 522481, at 3.
 In Stafinsky v. Stafinsky (1996), 116 Ohio App.3d 781, 784, this court held that a trial court must provide facts and reasons when awarding spousal support:
 "In making spousal support awards, R.C. 3105.18
requires the trial court to review the statutory factors in [R.C. 3105.18(C)(1)] that support such an order, and then indicate the basis for awarding spousal support in sufficient detail to facilitate adequate appellate review. Kaechele v. Kaechele
(1988), 35 Ohio St.3d 93, 96-97 * * *." (Parallel citation omitted.)
 Moreover, a trial court does not satisfy this requirement by simply stating that it considered the R.C. 3105.18(C)(1) factors:
 "`It is required that an entry awarding spousal support provide some illumination of the facts and reasoning underlying the judgment * * * This is true even though evidence was introduced below and contained in the record which may support some award of spousal support. * * *' (Citation omitted.)" Herman v. Herman (Mar. 28, 1997), Portage App. No. 96-P-0194, unreported, 1997 WL 158106, at 4. See, also, Stafinsky at 784.
 With the above principles in mind, we determine that the trial court's October 12, 1999 judgment entry satisfies the requirement to provide facts and reasons when awarding spousal support:
 "This is a 14 year marriage and the Wife is the primary caretaker of the two minor children. Wife expects to be working full-time in the near future, but her earning potential is far less than that of her husband who earns in excess of $80,000 a year. Considering the necessary living expenses of the Wife, the limitations of Wife's opportunities while she serves as primary caretaker for the children, the education of the parities, along with the other factors enumerated in O.R.C. Section 3105.18, it is further ORDERED, ADJUDGED AND DECREED that Husband shall pay, as spousal support, the sum of Nine Hundred Dollars ($900) a month for Forty-Eight (48) consecutive months or until Wife shall remarry or die. * * *"
 In reviewing a spousal support award on appeal, the appellate court must "look at the totality of the circumstances and determine whether the trial court acted unreasonably, arbitrarily or unconscionably." Kunkle at 67.
In the case sub judice, appellee has a much higher earning capacity than appellant. Appellee is a broker and a real estate manger for Century 21, Wilbur Realty, and has been involved in the real estate business since 1977. In 1997, appellee's income generated from Wilbur Realty was $80,800, while in 1998, his income was $87,100.[13] Further, appellee was also ordered to pay appellant child support in the amount of $572.13 per month, per child, for a total monthly payment of $1,144.26. In contrast, appellant is employed with Kent Optometric, earning $8 per hour and working approximately ten to fifteen hours a week.
When we consider the totality of the circumstances here, we cannot say that the trial court abused its discretion in ordering appellee to pay spousal support in the amount of $900 per month for a duration of four years. While we may have reached a different conclusion had we been asked to decide the matter in place of the trial court, our function upon review is merely to measure the lower court's adherence to the standards of fairness, not to substitute our judgment for that of the trier of fact. Kaechele at 94.
The fifth and final assignment of error alleges that the trial court's judgment entry is silent as to whether it considered any of the nine statutory factors relevant to a distributive award. From this appellant suggests that appellate review is precluded.[14]
As a general rule, R.C. 3105.171(C)(1) requires that marital property be divided equally. If, however, an equal division would produce an inequitable result, then the property of the parties must be divided in a manner that the court deems equitable. R.C. 3105.171(D).
In accordance with R.C. 3105.171(G), "any disbursement of property or distributive award made pursuant to R.C. 3105.171 requires the trial court to enter specific written findings of fact supporting its decision to unequally divide property between the spouses." Szerlip v. Szerlip
(1998), 129 Ohio App.3d 506, 512. Thus, "any unequal distribution of property in a divorce proceeding requires the trial court to enter written findings of facts supporting its decision." Szerlip at 512. See, also,Kaechele, 35 Ohio St.3d at paragraph two of the syllabus; Matic v. Matic
(July 27, 2001), Geauga App. No. 2000-G-2266, unreported, 2001 Ohio App. LEXIS 3360, at 19-20.
In the instant matter, a review of the May 26, 2000 judgment entry confirms that appellant was awarded $409,736 of the marital assets, or 49.1 percent of the marital property, while appellee was awarded $424,437, or 50.9 percent, a difference of approximately $14,701. To equalize this asset distribution, the trial court ordered appellee to pay appellant the sum of $7,350.50. Thus, appellant's total marital award was $417,086.50, or 50 percent.
Hence, it is evident that the trial court determined that the parties were entitled to an equal share of the marital estate. Therefore, the trial court was not required to make findings of facts to support such a determination. Only when a trial court makes an unequal division must the reasons for deviance from equal be set forth so as to enable appellate review. Here, as the trial court indicated, it sought "to equalize the asset distribution" between the parties. Upon remand, we expect there to be the same equal division. Accordingly, appellant's fifth assignment of error is without merit.
Based on the foregoing analysis, the judgment of the trial court is affirmed in part, and reversed and remanded in part. Specifically, it was error for the trial court to treat the Brookdale, Summers, and Garrett properties entirely as appellee's separate property. On remand, the parties are not permitted to introduce additional evidence with respect to this issue as they had the opportunity to do so at the June 1999 hearing. Instead, the trial court is instructed to examine its record to determine if credible evidence was presented on the use of non-marital funds and appreciation due to any traced funds. From any such evidence, the trial court shall determine if appellee met his burden of proof in demonstrating that some part of the three properties had become marital in nature, and apportion the property accordingly.
JUDGE JUDITH A. CHRISTLEY, FORD, P.J., GRENDELL, J., concur.
[1] As an aside, we note that pursuant to Civ.R. 6(B), a trial court "may not extend the time for taking any action under * * * Rule 59(B), [and] Rule 59(D) * * *." Further, Civ.R. 59 does not contain a provision for extending the fourteen-day time limit to file a motion for a new trial. "As such, Civ.R. 6(B) * * * and 59(B), taken together, absolutely prohibit the trial court from extending the time within which to file a * * * motion for new trial, and a trial court is prohibited from considering or entertaining any such motion." Snow v. Brown (Sept. 26, 2000), Franklin App. No. 99AP-1234, unreported, 2000 WL 1376442, at 3.
[2] Mr. Tinker's opinion was submitted as appellee's Exhibit 3.
[3] While appellee is the owner of these insurance policies, the insured is Mary F. Garrison.
[4] As an aside, we note that the trial court, in its October 12, 1999 judgment entry, incorrectly referred to the Brookdale property as Brookside.
[5] This is reflected as appellee's Exhibit 12.
[6] This is evidenced by appellee's Exhibit 13, to-wit: a copy of appellee's 1982 tax return wherein he indicated that the Summers property was acquired on December 1, 1980. Further, appellant's Exhibit 4 is a copy of the 1983 warranty deed which confirms that appellee transferred the Summers property to his father.
[7] This is evidenced by appellant's Exhibit 3.
[8] This is illustrated by appellant's Exhibit 5.
[9] The land contract was introduced as appellee's Exhibit 14.
[10] The loan application, admitted as appellant's Exhibit 2, asked what names will the title be held. The response was "as below in loan." The application further indicated appellant and appellee as the borrowers.
[11] In Bertoldi, there was little detail as to the amount each spouse contributed towards the mortgage or how the borrowed money was spent.
[12] To the contrary, appellee indicated that the money borrowed through the 1993 mortgage for the Summers property was used to pay off the existing mortgage of the father.
[13] Appellee's income from the corporation was demonstrated by his 1997 and 1998 W-2's, which were admitted into evidence as appellee's Exhibit 7.
[14] With respect to this assignment of error, appellant cites to R.C.3105.171(C)(4)(F). However, there is no such section under this statute. Presumably, appellant was referring to R.C. 3105.171(C) and (F).